## In re Justice.

(No. 350—Decided March 22, 1978.)

Mr. *Walter E. Schutt*, for appellant, the natural mother of Kathy Jean Justice.

Mr. *William B. McCracken*, assistant prosecutor, for appellee, the Clinton County Children's Services Board.

Mr. *Kenneth R. Matticks*, guardian *ad litem*.

Mr. *Armin Frank*, *amicus curiae*.

*Per Curiam.* This is an appeal from an order of the Court of Common Pleas of Clinton County, Juvenile Division, granting permanent custody of Kathy Jean Justice to the Clinton County Children's Services Board. The pertinent history of the case gleaned from the court's docket is that on April 20, 1972, a complaint was filed alleging that Kathy, a one-year-old child, was a dependent child as defined in R. C. 2151.04. On that same date the court order-

ed temporary custody of Kathy to be placed with the Children's Services Board. The Children's Services Board thereupon placed the child with foster parents named Wolfram and she has remained with the Wolframs continuously from that date on.

On July 27, 1972, the court, after an investigation and a hearing, ordered temporary custody to remain with the Children's Services Board. On April 15, 1975, a motion was filed by Kathy's mother to restore custody to her. A hearing was held May 27, 1975, and thirteen months later on June 29, 1976, the trial court put on a somewhat ambiguous entry stating: "The court having duly considered said motion, with restoration to be carried out gradually in order to permit the child and mother to become reacquainted, but with all possible speed." On January 18, 1977, a complaint was filed alleging that Kathy was a dependent child and praying that her permanent custody be granted to the Clinton County Children's Services Board. After an extensive hearing it was so ordered.

In her first, second and fifth assignments of error, appellant complains of various procedural matters, the sum and substance of which is that the court was without power to consider the prayer of the Children's Services Board for permanent custody, having previously ordered custody gradually restored to appellant. Appellant argues that the court's order of June 29, 1976, restoring custody to her, concluded the matter, and it was therefore error for the court to entertain the prayer of the Children's Services Board for permanent custody filed in January 1977.

The flaw in this argument is that R. C. 2151.23 provides:

"(A) The juvenile court has exclusive original jurisdiction under the Revised Code:

(1) Concerning any child who *on or about the date* specified in the complaint is alleged to be a juvenile traffic offender, delinquent, unruly, abused, neglected, or dependent;

(2) To determine the custody of any child not a ward of another court of this State; * * *." (Emphasis added.)

The fact that a court has ordered custody returned to

a parent at one time is no bar to the court considering the child's custody anew at a later date. By law the juvenile court has, as it must have, continuing jurisdiction over the welfare of children. It is perfectly possible under the changing facts and circumstances of life that a child may be "dependent," as that is defined in R. C. 2151.04, at one time and not be dependent at a later date. The reverse is likewise true.

The fact of dependency must be determined as of the time of the hearing. In re Kronjaeger (1957), 166 Ohio St. 172. Consequently, even though the court determined in June 1976 that custody should be restored to appellant—and it is not at all clear that this was the import of the court's order—nevertheless, the court has continuing jurisdiction over dependency and custody questions and was acting within its authority in considering anew the question of whether or not Kathy was a dependent child. Appellant's first, second and fifth assignments of error pertaining to that point are accordingly overruled.

In her third assignment of error appellant alleges that the trial court erred in allowing the appearance of attorney, Armin Frank, as amicus curiae in its proceedings. Frank had been retained by Kathy's foster parents and on their behalf had filed a motion to intervene and be made a party. The court overruled the motion to intervene but granted Frank's motion to file a brief amicus curiae and to take some part in the proceedings.

Generally, the rule is that permitting the appearance of an amicus curiae and the extent of his participation in the proceedings is a matter within the sound discretion of the trial court. A review of the transcript of proceedings here leads to the conclusion that, although the trial court permitted the amicus curiae wider latitude than was perhaps well advised, it did not reach the point of being an abuse of the court's discretion. The assignment is not sustained.

In her fourth, sixth and seventh assignments of error, appellant claims that the court erred in finding that returning Kathy to her would not be in the child's best interest; in finding that Kathy is a dependent child; and in grant-

ing permanent custody to the Clinton County Children's Services Board.

The heart of appellant's argument is that, there being no evidence she was unfit to give Kathy parental care and support, Kathy was not "dependent," as that term is defined in R. C. 2151.04. The court could not, therefore, lawfully grant permanent custody to the Children's Services Board.

In its June 29, 1976, order the court accepted this argument and concluded that because five of the older children had been returned to appellant in early 1974, it "presumed" the home was suitable and was powerless to take Kathy's custody from appellant.

In evaluating appellant's argument we must first turn to the record. It shows that appellant has had three husbands and borne ten children. Permanent custody of the first three children was vested in the Children's Services Board in 1961. Except for the youngest, all children have been in the temporary custody of the Board at one time or another. The record is replete with evidence of the instability and impoverished conditions of appellant's life. At the time of the hearing she was living in rather squalid conditions with her third husband, the five children older than Kathy and a baby by this last husband. The six children in her charge were being supported by Aid to Dependent Children. During the preceding six years at least half a dozen social agencies had been involved in trying to assist the family.

As previously noted, temporary custody of Kathy had been placed in the Children's Services Board in 1972 when she was one year old. From that time until the present she has been in the Board's custody and placed with the Wolframs. During that period, appellant has seen the child but once and neither she nor the husband has ever furnished any support for Kathy.

Dr. Stanley M. Kravitz, an experienced clinical psychologist, testified that he had examined Kathy extensively and as a result of his examination he had determined that the child had an unconscious level of anxiety due to the trauma in the first year of her life—the year she was with

appellant; she was psychologically dependent on the Wolframs for love and nurture; she was not aware of having any parents other than the Wolframs; that her removal from the Wolframs would have serious negative effects probably resulting in severe depression including the possibility of suicide. He further testified that the psychological effect on Kathy if she were removed from the Wolframs would be like that of a child who has had both parents killed. This testimony was uncontradicted and, indeed, is buttressed by a report contained in the record made by another psychologist, Dr. Robert W. Halliday.

R. C. 2151.04 defines a dependent child as follows:

"As used in sections 2151.01 to 2151.54, inclusive, of the Revised Code, dependent child includes any child:

"(A) Who is homeless or destitute or without proper care or support, through no fault of his parents, guardian, or custodian;

"(B) Who lacks proper care or support by reason of the mental or physical condition of his parents, guardian, or custodian;

"(C) Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming his guardianship."

It would appear from the court's entry herein that it did not base its finding of dependency on paragraphs (A) or (B) but on (C). In its entry the court states:

"Upon all of the testimony and evidence adduced, the court finds, by clear and convincing evidence, that:

"Kathy Jean Justice is a dependent child as defined by Section 2151.04 of the Ohio Revised Code.

"Kathy Jean Justice is psychologically dependent on her foster parents and she has been fully integrated into their family.

"It would not be in the best interests of Kathy Jean Justice to be returned to her natural mother."

We conclude that the court's findings that Kathy was psychologically dependent on her foster parents and had been fully integrated into their family and that it would be contrary to her interests to return her to her

natural mother, satisfy the requirements of R. C. 2151.04 (C) and support the conclusion that Kathy was a child whose condition was such as to warrant the state in the interests of the child in assuming her guardianship.

Considerable light is cast on the problem before us by the recent decision of the Supreme Court of Ohio in the case of *In re Perales* (1977), 52 Ohio St. 2d 89. Although not directly concerned with the meaning of "dependency," the court's extended discussion of the factors to be considered in a determination of custody between a parent and non-parent illuminate what a court should consider in determining whether a child is one "whose condition or environment is such as to warrant the state, in the interests of the child, in assuming his guardianship."

In *Perales*, the Court held, among other things, that a parent is unsuitable if "an award of custody to the parent would be detrimental to the child."

On the evidence before it, the court was abundantly justified in this case in finding that appellant was unsuitable as a parent for Kathy because an award of custody to her would be detrimental to the child. The court was accordingly justified in finding Kathy dependent under R. C. 2151.04(C). Having determined that Kathy was a dependent child, the court was authorized under R. C. 2151.353(D) to commit the child permanently to the Children's Services Board.*

Accordingly we find appellant's fourth, sixth and seventh assignments of error without merit and affirm the trial court's decision.

SHANNON, P. J., BETTMAN and CASTLE, JJ., Concur.

---

*R. C. 2151.04(C) is not to be so broadly interpreted as to permit any child to be permanently removed from its natural parent simply because the court determines the child may be better off with someone else. It must be construed, as we construe it here, to cover the situation where a return of the child to the parent would be clearly detrimental to such child. Furthermore, the importance to a child of living with its natural parents is a factor to be weighed in determining what is or is not detrimental. See *Perales*, *supra*, at note 9.