IN RE BIBB (TWO CASES).

(Nos. C-790893 and C-790894—Decided October 15, 1980.)

*Ms. Monica R. Bohlen,* for the mother of the two children.
*Mr. Simon L. Leis, Jr.,* prosecuting attorney, and *Mr. James W. Harper,* for the Hamilton County Welfare Department.

*Per Curiam.* This cause came on to be heard upon appeal from the Juvenile Division of the Court of Common Pleas of Hamilton County.

Respondent-appellant, the mother of the two children involved, seeks reversal of the order of the Juvenile Division that adjudicated her two children to be dependent and ordered temporary commitment to the Hamilton County Welfare Department, the appellee herein. In these consolidated appeals, the mother asserts four errors of which we find one has merit requiring the judgment below to be reversed.

The issues raised are whether neglecting to call attention

of the court to its failure to follow the procedural requirements of R. C. Chapter 2151 constitutes a waiver of procedural errors, whether the trial court properly restricted its first hearing to the adjudication of dependency to the exclusion of the disposition of the children if found dependent, and whether the finding of dependency was against the weight of the evidence.

A full hearing was held on the Welfare Department's complaint that the children were both dependent (R. C. 2151.04) and neglected (R. C. 2151.03); at the conclusion of the hearing, the court adjudicated them dependent only. At the time of the hearing, the male child was ten years old and the female child was eight years old. The mother had been divorced and was receiving public aid. She had an emotional difficulty that had caused her to be hospitalized nine times in eight years. On each occasion, being aware of the onset of her problem, she managed to place the children in a safe place with another person or with one institution or another. The mother relies heavily on support from various public, religious, and charitable organizations; and, she had a long history with the Welfare Department. Further facts will be developed in the discussion of the assignments of error.

The first assignment of error contends that the court erred in failing to ascertain whether all necessary parties had received notice of the hearing and whether unrepresented parties had waived their right to counsel. These contentions are not properly before us because no party to the proceeding brought the claimed errors to the attention of the trial court, prior to or during the hearing, by objection, motion, or otherwise, when the alleged error could have been avoided or corrected by the trial court. *Stores Realty Co.* v. *Cleveland* (1975), 41 Ohio St. 2d 41; *Manes* v. *Espy* (Hamilton Co. Ct. of Appeals Nos. C-77724 and C-77743, October 31, 1979), unreported; 4 Ohio Jurisprudence 3d 298, Appellate Review, Section 137.

The only exception to this rule is plain error, but the errors in the instant case do not rise to that level. The record discloses that the only party who did not attend the hearing was the father of one of the children, who had been served by publication but failed to appear. Furthermore, the mother and the father of the other child were represented by counsel, and the children by a guardian ad litem (as authorized by R. C. 2151.352). We find no requirement in the statutes or case law

that requires the guardian ad litem to be an attorney or to have separate counsel. In any event, we infer from the record that the guardian ad litem was an attorney.

The second assignment contends that error occurred when the court examined the children *in camera* without the presence of their guardian ad litem and the consent of all parties, the court thereafter failing to report to the parties the contents of that examination. Again, this claim was not brought to the attention of the trial court. The record discloses that the mother's counsel presented the children as her witnesses and stated that it would be "agreeable to us" if the court had an *in camera* conference with them that would be recorded. The error, if any,[1] was waived. The second assignment has no merit.

The third assignment of error contends that the court concurrently conducted a mixed hearing on the adjudication of dependency and the disposition of the children, in violation of the requirement of R. C. 2151.35 that the adjudication be heard and determined first, separately and apart from the matter of disposition. We find no prejudice in the record, because while the court allowed one witness to be questioned for a brief period about the availability of an aunt and uncle as custodians, this line of testimony was terminated on the mother's motion before it had gone very far. Further, the court indicated clearly that it was aware of the requirement for bifurcation, and the temporary award of custody was to the Welfare Department, not the aunt and uncle. Using the language of *In re Feiler* (Hamilton Co. Ct. of Appeals No. C-780549, October 17, 1979), unreported, the record fails to show " * * * that the premature receipt of matters relating more properly to dispositional issues so bewitched the mind of the * * * [court] that the fundamental determination of dependency was cast in doubt. * * * " The instant record fails to establish reversible error. The assignment of error is overruled.

The fourth assignment of error has merit. In it, the mother asserts, in essence, that the finding of dependency was against

---

[1] The record shows that a religious sister from St. Aloysius Orphanage accompanied the children and that the interview, brief in the extreme, covered the importance of taking an oath and telling the truth, the conditions and the food at the orphanage, and how they liked living with their mother. We perceive no reversible error.

120

the weight of the evidence. Children are dependent under R. C. 2151.04 if they lack " * * * proper care or support by reason of the [mother's] mental * * * condition * * * " (R. C. 2151.04[B] ), or if their " * * * condition or environment is such as to warrant the state * * * [to assume their] guardianship" (R. C. 2151.04[C] ) for their own best interests.[2] Unlike a finding of neglect under R. C. 2151.03, which requires proof that the parents were willfully at fault in abandoning or neglecting the children or refusing to perform their parental duties, a finding of dependency under R. C. 2151.04 must be grounded on whether the children are receiving proper care and support. The focus is on the condition of the children, not the fault of the parents. A definition of "proper parental care" is found in R. C. 2151.05, which states that a child is without proper parental care if the home is filthy and unsanitary, or he does not have necessary support, medical attention and education or discipline. The fact of dependency must be proved by clear and convincing evidence. R. C. 2151.35.

We note that the award of custody of the two children in the case *sub judice* was temporary only and that the question of permanently divesting the mother of all legal rights and obligations to or from the children was deferred. It has been held that an initial adjudication of dependency that results in a temporary order does not constitute legal grounds for permanent commitment when twenty-two months have elapsed between the temporary custody hearing and the permanent custody hearing, and when, during that period, the children were returned to the natural parents. *In re Fassinger* (1974), 43 Ohio App. 2d 89, affirmed (1975), 42 Ohio St. 2d 505. The mother may bring the matter of custody back before the court so long as the transfer of custody is only temporary. *In re Feiler, supra,* at fn. 1. While it might be thought that a dependency hearing that results in a temporary order requires

[2] R. C. 2151.04 reads in full:

"As used in sections 2151.01 to 2151.54, inclusive, of the Revised Code, 'dependent child' includes any child:

"(A) Who is homeless or destitute or without proper care or support, through no fault of his parents, guardian, or custodian;

"(B) Who lacks proper care or support by reason of the mental or physical condition of his parents, guardian, or custodian;

"(C) Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming his guardianship."

less proof of the fact of dependency, we reject that concept. It has no basis in the statutes, and in many cases, such as this one, the type of final order (whether temporary or permanent) is not known in advance. The statute clearly states that the finding of dependency must be made on clear and convincing evidence.

We are sensitive to the rule that an appellate court will not substitute its judgment for that of the trial court. The rule is founded on the more accurate perceptions of a judge who hears and sees the parties testify, and who can make personal, intimate observations about the children, their parents and the relationships between them. We acknowledge that the trial court has discretion in resolving difficult questions about a child's relationship to his or her parents during the fluid, ever-changing years of growing up. *State, ex rel. Scordato,* v. *George* (Hamilton Co. Ct. of Appeals No. C-800603, October 8, 1980), unreported.

Nevertheless, we find the evidence in the instant case insufficient to sustain a finding of dependency. The mother's witnesses, whose testimony was not controverted by the Welfare Department, testified that the children were clean, properly clothed and well fed; one witness said that they were happy, affectionate kids. They had a good relationship with their mother. While each of them had trouble of one sort or another in school (such as, eating crayons, kicking the principal, being late, having temper tantrums, "acting out," and not having many friends), these problems were corrected over a period of time. Their school reports were favorable, both being average pupils, and they had good reports from a summer camp experience. The mother's psychiatrist stated that he never saw any psychiatric reason for removing them from her custody.

The psychiatrist, who had treated the mother since 1973 on a periodic basis, diagnosed her problems as recurrent episodic depressions, but he saw no reason why she could not be a competent mother. The depressions will recur, but with less frequency; she is not likely to deteriorate and has matured as a human being. The doctor reported, as did other witnesses, that one cause of her depressions was the stress she felt from pressure exerted on her about her children by the Welfare Department. The children are the focus of her life, and the

threat or even suggestion of removal of the chilren brought on debilitating reactions. In fact, she was kept in the hospital for an extended time after the instant complaint was filed in order to assist her in settling down and preparing herself for appearance in the Juvenile Division hearing. The Welfare Department did not rebut the clear suggestion that, in recent months, it had exacerbated the situation, unknowingly but inevitably; there is a paucity of evidence demonstrating any attempts to cure and resolve a difficult situation.

Militating in favor of a finding of dependency is the evidence about those periods of time when the children had to be placed immediately with someone else when the mother was hospitalized, and the many moves from one residential location to another. The mother managed to make some provision for the children each time, but she was nonetheless physically unable to care for them while in the hospital. While the children have apparently experienced a normal development, they have had problems with adjustment in the past and are subject to wide, perhaps irrational, shifts of attitude. They appeared, to one Welfare Department worker, to be scared and nervous during at least one of the mother's depressive episodes.

In this case, we find none of the instability and impoverished conditions of the mother's life, none of the failure to support or care for the children, and none of the psychological dependency and affectionate attachment of the children for foster parents or others standing *in loco parentis,* as we did in *In re Justice* (1978), 59 Ohio App. 2d 78. The Supreme Court held in *In re Masters* (1956), 165 Ohio St. 503, that even though the mother had been confined in a mental hospital for two years, the children were not "neglected" under R. C. 2151.03. As we said in *In re Brown* (Hamilton Co. Ct. of Appeals No. C-77730, November 1, 1978), unreported, a parent's primary rights to the care and custody of a child are rights that must be protected, and parental custody will be terminated only when necessary for the mental and physical development of the child. It has been the law in this state for over one hundred years that the parents have the paramount right to child custody, and that " * * * the welfare of the minor child is first to be considered." *Clark* v. *Bayer* (1877), 32 Ohio St. 299, at paragraph one of the syllabus; *In re Perales* (1977), 52 Ohio St. 2d 89, 97.

The fourth assignment of error has merit.

The evidence did not support a finding of dependency. See *In re Burrell* (1979), 58 Ohio St. 2d 37.

We reverse the judgment below and remand the cause for further proceedings.

*Judgment reversed*
*and cause remanded.*

SHANNON, P. J., KEEFE and BLACK, JJ., concur.