IN RE BISHOP.

(No. CA-863—Decided
March 16, 1987.)

*Wilson, Murray & Anderson* and *Joseph Murray,* for appellant.

*Mark C. Heydinger,* assistant prosecuting attorney, for appellee.

MILLIGAN, P.J. This case is an appeal from the decision of the Ashland County Court of Common Pleas, Juvenile Division, finding that Crystal Bishop was a dependent child and terminating the parental rights of the child's parents. The mother appeals assigning a single error.

Assignment of Error No. I

"The trial court erred as a matter of law in finding that Crystal Bishop was a 'dependent child.' "

On March 9, 1984, Brinda Bishop, mother of Crystal and appellant herein, was convicted of complicity to commit aggravated murder, complicity to commit aggravated robbery, and complicity to commit aggravated burglary. She was sentenced to life imprisonment on the murder charge to be served with concurrent sentences of five to twenty-five years on the robbery and burglary charges. While incarcerated in the Ohio Reformatory for Women at Marysville, appellant gave birth on May 16, 1984 to Crystal.

Appellant's husband, Alton Bishop, never made a claim for the infant. Appellant and Bishop have been separated since 1982. Appellant claims that the natural father of Crystal is John Held, and Held testified to that effect before the trial court. Held was also involved in the same crimes for which appellant was convicted, and was convicted of aggravated murder, aggravated robbery and aggravated burglary. He was sentenced to life imprisonment on the murder charge to be served with a consecutive sentence of five to twenty-five years and a concurrent sentence of five to twenty-five years on the robbery and burglary charges.

Appellant requested that Crystal be placed in a home where her mother and father and the family of her sister and brother-in-law lived. The trial court found that placement of Crystal with these relatives would be inappropriate and not in Crystal's best interest. The trial court denied the request.

The only issue before this court is whether the trial court erred as a matter of law in adjudicating Crystal to be

a dependent child pursuant to R.C. 2151.04(C).

A "dependent child" is any child:

"(A) Who is homeless or destitute or without proper care or support, through no fault of his parents, guardian, or custodian;

"(B) Who lacks proper care or support by reason of the mental or physical condition of his parents, guardian, or custodian;

"(C) Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming his guardianship." (R.C. 2151.04.)

The fact of dependency must be proved by clear and convincing evidence. R.C. 2151.35; *In re Bibb* (1980), 70 Ohio App. 2d 117, 120-121, 24 O.O. 3d 159, 161-162, 435 N.E. 2d 96, 99. The focus of a charge that a child is dependent is on the child and his conditions, and not on the faults of the parents. A finding of dependency must be rooted on the question whether the child is receiving proper care. *In re Campbell* (1983), 13 Ohio App. 3d 34, 36, 13 OBR 36, 38, 468 N.E. 2d 93, 96; *In re Luke* (Jan. 13, 1984), Coshocton App. No. 83-CA-09, unreported, at 9. Cf. *In re East* (C.P. 1972), 32 Ohio Misc. 65, 67, 61 O.O. 2d 38, 40, 288 N.E. 2d 343, 345 ("Certainly, the faults and failures of parents may be contributing factors creating a condition or environment such as to warrant the state to intercede in the child's behalf.").

We acknowledge the dangers of dependency proceedings involving newborn children. *In re Campbell, supra; In re East, supra; In re Baby Girl S.* (C.P. 1972), 32 Ohio Misc. 217, 61 O.O. 2d 439, 290 N.E. 2d 925; *In re Turner* (C.P. 1967), 12 Ohio Misc. 171, 41 O.O. 2d 264, 231 N.E. 2d 502.

"However, where the state can show that the 'condition' or 'environment' into which a newborn baby will enter is such as to justify the state's preventing that child from entering that environment, it is clear that the state may intervene. R.C. 2151.04(C). By focusing on the environment, which can be viewed and evaluated with or without the child, the legislature has chosen to permit the state to intercede in familial affairs at this early stage. A juvenile court should not be forced to experiment with the health and safety of a newborn baby where the state can show, by clear and convincing evidence, that placing the child in such an environment would be threatening to the health and safety of that child.

"* * * To justify permanently removing children from their parents at such an early age, the risk of imminent harm must be great and the potential for a successful reunification slight." (Footnote omitted.) *In re Campbell, supra,* at 36, 13 OBR at 38-39, 468 N.E. 2d at 96-97.

There is clear and convincing proof of Crystal's dependency in the instant case which supports the trial court's judgment. Crystal was born to Brinda Bishop while the mother was incarcerated in prison. The mother has been sentenced to life imprisonment, and is not eligible for parole until after serving fourteen years. The appellant admits that she cannot keep her child at the Ohio Reformatory for Women in Marysville. Appellant's husband at the time of birth had abandoned the family. The husband has demonstrated no interest in either Crystal or an earlier child of this marriage.

At the adjudicatory hearing in the instant case, both appellant and John Held admitted that John Held is the father of Crystal. Held is incarcerated at the Chillicothe Correctional Facility serving a term of life imprisonment. He is not eligible for parole until serving eighteen and one-half years. Held has taken no formal steps to acknowledge his paternity of Crystal. See *In re Byrd* (1981), 66 Ohio St. 2d 334, 336-337, 20 O.O. 3d 309, 311, 421 N.E. 2d 1284, 1286 (listing methods in Ohio

by which a father can legitimate his child); *In re Vickers Children* (1983), 14 Ohio App. 3d 201, 205, 14 OBR 228, 233, 470 N.E. 2d 438, 444.

Appellant contends, however, that Crystal would receive adequate "parental care" if she were placed with appellant's relatives. These relatives are appellant's mother and father, Betty and Clarence Varner, and appellant's sister and brother-in-law, Linda and Michael Booth. Placement with relatives is a healthier alternative to the termination of parental rights if the relatives can provide the necessary care the child requires.

"* * * When a child is placed with a relative, termination is both unnecessary and unwise unless the relative wishes to adopt the child or is unwilling to provide long-term care. As long as the relative is willing to provide care until the parents can resume custody, the child's needs for stability and attachment are satisfied. In fact, initiating termination might place the relative in the awkward position of having to act against the parents. * * *" (Footnote omitted.) Wald, State Intervention on Behalf of "Neglected" Children: Standards for Removal of Children from Their Homes, Monitoring the Status of Children in Foster Care, and Termination of Parental Rights (1976), 28 Stan. L. Rev. 623, 697.

In April 1984, the Ashland County Department of Human Services conducted an investigation of the home where both the Varners and Booths resided. The agency determined that the home was unsuitable for placement because of the living conditions of the home. The home was a three-bedroom apartment which housed the Varners, the Booths, and the Booths' three children. At the time of the investigation none of the adults was working and the only income was from government relief programs. The agency determined that this was an unsuitable environment because of the overcrowding and social and economic impoverishment.[1] Since that investigation, no member of the Varner-Booth household has contacted the agency to inquire of the health and well-being of Crystal or to petition for custody of her.

At the adjudicatory hearing, appellant produced testimony that the Varners and Booths had relocated from their previous apartment into a four-bedroom house. At the time of the hearing, however, both the financial and employment situations of the Varners and Booths had remained unchanged. The court made inquiry into the sleeping arrangements at the home to determine if the problem of overcrowding had been alleviated. The court found:

"* * * The Booths had three children of their own. All three of the Booth children were sharing the same bedroom with less than adequate and acceptable provisions. * * * Severe overcrowding still existed. Severe poverty conditions still existed." Findings of Fact No. 23, Judgment Entry of March 28, 1986.[2]

The determination of whether a

---

[1] We note that social and economic impoverishment does not necessarily lead to inadequate parenting or inadequate homes for children. See *In re Campbell, supra* (13 Ohio App. 3d), at 37, 13 OBR at 39, 468 N.E. 2d at 97 (Jones, J., concurring); *New Jersey Div. of Youth & Family Services* v. *A.W.* (1986), 103 N.J. 591, 605-607, 512 A. 2d 438, 445-447, and fn. 8; Wald, State Intervention on Behalf of "Neglected" Children: A Search for Realistic Standards (1975), 27 Stan. L. Rev. 985, 1020-1024.

[2] Reporter's Note: The March 28, 1986 entry of the trial court, Michael R. McKinley, J., has been deleted from the reported opinion.

child is dependent must be made as of the time of the hearing on the complaint. *In re Justice* (1978), 59 Ohio App. 2d 78, 80, 13 O.O. 3d 139, 140, 392 N.E. 2d 897, 899. Cf. *In re Baby Girl S., supra* (32 Ohio Misc.), at 218, 61 O.O. 2d at 440, 290 N.E. 2d at 926 ("The issue of whether the child is a dependent child is to be determined as of 'on or about the date specified in the complaint.'* * *"). In the case *sub judice,* there is ample evidence to support the trial court's findings that the severe overcrowding and poverty conditions continued to exist within the Varner-Booth household despite its move to the larger house.

Finally, the child does *not* first have to be put into a particular environment before a court can determine that that environment is unhealthy or unsafe. *In re Campbell, supra* (13 Ohio App. 3d), at 36, 13 OBR at 38-39, 468 N.E. 2d at 96; *In re Turner, supra.* The unfitness of a parent, guardian or custodian can be predicted by past history.

"* * * [A] child should not have to endure the inevitable to its great detriment and harm in order to give the * * * [parent, guardian, or custodian] an opportunity to prove her suitability. To anticipate the future, however, is at most, a difficult basis for a judicial determination. The child's present condition and environment is the subject for decision not the expected or anticipated behavior of unsuitability or unfitness of the * * * [parent, guardian, or custodian]. * * * The law does not require the court to experiment with the child's welfare to see if he will suffer great detriment or harm." *In re East, supra* (32 Ohio Misc.), at 69, 61 O.O. 2d at 41, 288 N.E. 2d at 346. See, also, *In re Custody of Minor* (1979), 377 Mass. 876, 882-883, 389 N.E. 2d 68, 73 (court need not wait until presented with maltreated child before it decides the necessity of "care and protec-

tion"); *In re Interest of J.A.J.* (Mo. App. 1983), 652 S.W. 2d 745, 749 (to wait until child suffers harm to terminate parental rights would be "a tragic misapplication of the law"); *New Jersey Div. of Youth & Family Services v. A.W.* (1986), 103 N.J. 591, 616, 512 A. 2d 438, 451, at fn. 14 (to wait until injury to decide issue of health and development of child makes no sense).

It is not necessary that the Varners or Booths be given the opportunity to prove that they can properly care for Crystal.

The trial court did not err as a matter of law or abuse its discretion in finding Crystal to be a dependent child. See *In re Bibb, supra* (70 Ohio App. 2d), at 121, 24 O.O. 3d at 162, 435 N.E. 2d at 99 ("* * * [T]he trial court has discretion in resolving difficult questions about a child's relationship to his or her parents during the fluid, ever-changing years of growing up.* * *").

We overrule the assignment of error.

The judgment of the Court of Common Pleas of Ashland County, Juvenile Division, is affirmed.

*Judgment affirmed.*

HOFFMAN and TURPIN, JJ., concur.