**In re WEBB et al.**

[Cite as *In re Webb* (1989), 64 Ohio App.3d 280.]

Court of Appeals of Ohio,
Hamilton County.

No. C–880204.

Decided Sept. 13, 1989.

*G. David Yaros,* for appellant Michael Webb, Sr.

*Arthur M. Ney, Jr.,* Prosecuting Attorney, and *David L. Sellers,* for appellee Hamilton County Department of Human Services.

*Joni V. Wilkens,* Guardian Ad Litem.

---

*Per Curiam.*

Appellant, Michael Webb, Sr., is the natural father of Michelle Webb, born November 25, 1979, Melissa Webb, born December 13, 1981, and Michael

Webb, Jr., born January 31, 1983. On January 1, 1987, appellant's twenty-one-day-old daughter, Monica Webb, died of interstitial pneumonia. An autopsy revealed that the infant had been sexually abused. Appellee Hamilton County Department of Human Services was notified. Michelle, Melissa and Michael, Jr., were examined by Dr. Robert Shapiro. Michelle and Melissa exhibited physical signs of sexual abuse. The children named their father as the perpetrator.

Appellee's caseworker suggested to Marcia Webb, the natural mother of the children who is now deceased, that she separate the children from their father. In February 1987, Marcia Webb denied appellee's caseworker access to the children, whereupon appellee filed a complaint seeking an order of temporary commitment of the children, pursuant to R.C. 2151.353(A)(2). The trial court issued an order granting appellee temporary custody of the three children. Appellant was indicted on criminal charges stemming from the abuse of his children. All charges terminated in appellant's favor by dismissal or acquittal.

On July 9, 1987, appellee filed an amended complaint, pursuant to R.C. 2153.353, seeking permanent commitment. Following the adjudicatory phase of the proceedings, the trial court found Michelle and Melissa to be abused, neglected and dependent, and Michael, Jr., to be neglected and dependent. The dispositional phase of the trial commenced December 16, 1987. On December 19, 1987, Marcia Webb died.

A motion to dismiss the amended complaint, on the basis that the court lacked jurisdiction because appellant had not been served with a summons along with the amended complaint, was filed January 20, 1988. The trial court overruled appellant's motion. Adjudicatory findings of fact and conclusions of law were issued February 22, 1988. On March 11, 1988, the trial court issued dispositional findings of fact and conclusions of law, awarding appellee permanent custody of the children. Appellant timely appealed, raising ten assignments of error for our review.

█ Appellant's first assignment of error alleges:

"The trial court erred to the prejudice of respondent-appellant when it overruled his motion to dismiss on the basis of lack of service."

Appellant argues that even though he was served with a copy of the amended complaint, the trial court had no jurisdiction to enter an order of permanent commitment because he was never served with a summons, as required by R.C. 2151.353(B).

At the time of the proceedings *sub judice,* R.C. 2151.353(B)[1] provided in pertinent part:

"No order for permanent custody shall be made at the hearing at which the child is adjudicated abused, neglected, or dependent except and unless the complaint alleging the abuse, neglect, or dependency contains a prayer requesting permanent custody and the summons served on the parents contains a full explanation that the granting of an order for permanent custody permanently divests them of their parental rights and contains a full explanation of their right to be represented by counsel and to have counsel appointed pursuant to Chapter 120. of the Revised Code if they are indigent.

"If after making disposition as authorized by division (A)(2) or (3) of this section, a motion is filed in accordance with section 2151.413 of the Revised Code, which motion requests permanent custody of the child, the court may grant permanent custody of the child to the movant in accordance with section 2151.414 of the Revised Code." 141 Ohio Laws, Part II, 3842.

In *In re Fassinger* (1975), 42 Ohio St.2d 505, 71 O.O.2d 503, 330 N.E.2d 431, the Supreme Court stated:

"We hold that under R.C. 2151.353, the filing of a complaint containing a prayer requesting permanent custody, sufficiently apprising the parents of the grounds upon which the order is to be based, and the service of summons upon the parents, explaining that the granting of such an order permanently divests them of their parental rights, are prerequisite to a valid adjudication that a child is neglected or dependent for the purpose of obtaining an order for permanent custody divesting parental rights." *Id.* at 508, 71 O.O.2d at 504, 330 N.E.2d at 433.

The *Fassinger* court noted that to deprive parents of permanent custody of their children, without proper notice, summons, and hearing, would be "manifestly unfair." *Id.*

In *In re Infant Female Luallen* (1985), 27 Ohio App.3d 29, 27 OBR 30, 499 N.E.2d 358, we stated that "the statutory requirements controlling the service of summons in dependency cases are designed to effect proper notice on all necessary parties to the action." *Id.* at 31, 27 OBR at 32, 499 N.E.2d at 360. There is no question that appellant in the instant case had actual notice of the proceedings, appeared, defended, and was given a full opportunity to be heard. Appellant does not argue that he was unaware of the nature of the proceedings. Further, appellant was represented by counsel throughout the

---

1. R.C. 2151.353(B) was amended effective January 1, 1989.

proceedings. In addition, the amended complaint served on appellant reads in part:

"You are hereby notified that when a complaint contains a prayer or request for permanent custody of a child or children, the gaining [*sic*] of such permanent custody takes from the natural parents all rights, duties and obligations of a parent, including the right to consent to an adoption of the child or children."

Because the record clearly demonstrates that appellant had actual notice of the proceedings, fully understood his rights and the nature of the proceedings, and participated throughout, the first assignment of error is overruled.

■ Appellant's second assignment of error alleges the trial court erred in admitting the expert testimony and opinion evidence of Dr. Robert Shapiro because it was based upon hearsay statements, and not upon any medical findings or expertise. Further, appellant argues that the trial court should have granted appellant's motion for a mistrial on the basis that Dr. Shapiro contradicted his own testimony.

Dr. Shapiro is the medical director of the Social and Medical Clinic of the Children's Hospital Medical Center. He described the procedure followed by the clinic in generating a report of sexual abuse. A clinic social worker interviews the child, compiling a social history. A physical examination of the child is then performed by Dr. Shapiro. Both the social history given by the child and the physical findings are reviewed by the physician in forming the overall "clinical impression" as to whether the child has been sexually abused.

Dr. Shapiro testified that he examined the Webb children on January 30, 1987. He found physical injuries to Michelle and Melissa which were consistent with sexual abuse. Michael, Jr. showed no physical signs of sexual abuse; however, Dr. Shapiro testified that this is not inconsistent with a history of sexual abuse. Initially, Dr. Shapiro testified on direct examination that he had read the social histories given by the Webb children at the time he conducted his physical examinations. While still on direct examination, Dr. Shapiro corrected himself, stating that he read the social histories after he performed the physical examinations. Dr. Shapiro stated that the histories of sexual abuse given by the Webb children were consistent with his medical findings. At no time did Dr. Shapiro contradict his "clinical impression" that Michelle and Melissa had been sexually abused. Dr. Shapiro had no opinion as to whether Michael, Jr. had been sexually abused. In addition, Dr. Shapiro reviewed the coroner's report on the deceased infant Monica Webb, and expressed the opinion that she had also been sexually abused.

■ It is clear that Dr. Shapiro's opinions as to whether sexual abuse had occurred were properly based on his physical examinations, and the social histories given by the children for the purpose of medical diagnosis. Any inconsistency in his testimony regarding the point at which he read the social histories of the children goes to the weight to be given Dr. Shapiro's testimony. The second assignment of error is overruled.

Appellant's third assignment of error alleges:

"The trial court erred to the prejudice of respondent-appellant in admitting the direct testimony of psychology trainee Dudley during the adjudicatory stage of the proceedings."

■ During the adjudicatory phase of the trial, Dr. Stanley Dudley, a staff psychologist for Hyde Park Psychological Services ("HPPS"), was called by appellee to testify regarding emotional and intelligence evaluations which he made of the Webb children. At the time Dr. Dudley administered the tests to the children, he was a postdoctoral intern, completing the last three months of his licensing requirements under the supervision of Dr. Paul Deardorff at HPPS. At the time he testified, Dr. Dudley was a fully licensed psychologist.

■ The competency of an expert witness is a matter within the sound discretion of the trial court, and a court's ruling thereon will not be reversed unless there is a clear showing of an abuse of that discretion. *Leichtamer v. American Motors Corp.* (1981), 67 Ohio St.2d 456, 21 O.O.3d 285, 424 N.E.2d 568. We find no abuse of discretion in the admission of the expert testimony of Dr. Dudley. The fact that Dr. Dudley was not licensed at the time he administered the tests to the children goes to the weight to be given his testimony.

■ Appellant also argues under the third assignment of error that the trial court erred in allowing Dr. Dudley to testify, in the adjudicatory phase, as to the needs of the children for future psychological treatment. Further, Dr. Dudley testified as to the treatment and recidivism of sexual offenders. We agree that this type of testimony should have been presented in the dispositional phase of the trial; however, we find, following a complete review of the record, that any error in the admission of this testimony during the adjudicatory phase of the proceedings was not prejudicial to appellant.

■ Finally, appellant argues that his denial that he abused his children was improperly used against him, in light of the fact that he was not found guilty of any criminal charges. The medical experts testified that one problem with attempting to treat the Webb family was that appellant continually denied, in the face of physical evidence, that his children had been abused. The testimony was that in order for appellant and his children to be

treated properly, appellant had to acknowledge that someone had abused his children; however, appellant did not have to acknowledge that he was the abuser. The trial court throughout the trial stated that the perpetrator of the sexual abuse of the Webb children was unknown. It is clear that in discussing appellant's "denial" of the abuse, the medical experts were referring to appellant's inability to accept the fact that his children had been abused, and not to appellant's denial that he had abused his children. Appellant's third assignment of error is overruled.

Appellant's fourth assignment of error alleges:

"The trial court erred to the prejudice of respondent-appellant by allowing the admission of hearsay statements of the minor children."

Appellant argues that Patricia Myers, a social worker for the Social and Medical Clinic of the Children's Hospital Medical Center, was permitted to testify as to statements which the Webb children made in the interview during which she obtained the social histories. Appellant's assignment of error is overruled because appellant did not raise a hearsay objection to the testimony at trial. An appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. *State v. Williams* (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364, vacated in part on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3137, 57 L.Ed.2d 1156. *In re Miller* (May 30, 1979), Hamilton App. No. C–780554, unreported. Further, appellant conducted an extensive cross-examination of the witness concerning the interview, during which appellant introduced into evidence a portion of a transcript of the interview.

For his fifth assignment of error, appellant alleges the trial court erred in finding Michelle, Melissa and Michael Webb, Jr. to be dependent. At the time appellant's children were adjudicated dependent, R.C. 2151.04[2] defined a "dependent child" as any child:

"(A) Who is homeless or destitute or without proper care or support, through no fault of his parents, guardian, or custodian;

---

**2.** R.C. 2151.04 has been amended to include the following:
  "(D) To whom both the following apply:
  "(1) He is residing in a household in which a parent, guardian, custodian, or other member of the household has abused or neglected a sibling of the child;
  "(2) Because of the circumstances surrounding the abuse or neglect of the sibling and the other conditions in the household of the child, the child is in danger of being abused or neglected by that parent, guardian, custodian, or member of the household." 142 Ohio Laws, Part I, 203.

"(B) Who lacks proper care or support by reason of the mental or physical condition of his parents, guardian, or custodian;

"(C) Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming his guardianship." 133 Ohio Laws, Part II, 2045–2046.

A finding of dependency under R.C. 2151.04 must be grounded on whether the children are receiving proper care and support. *In re Bibb* (1980), 70 Ohio App.2d 117, 24 O.O.3d 159, 435 N.E.2d 96. The focus is on the condition of the children, not the fault of the parents. *Id.*

The record reveals that the twenty-one-day-old infant Monica Webb was sexually abused. Further, the evidence showed that both Michelle and Melissa Webb exhibited injuries consistent with sexual abuse. The confirmed sexual abuse of a child in a home is a proper consideration in assessing the condition or environment of any other child in the home. We find the record contains ample credible evidence to support the trial court's finding of dependency under R.C. 2151.04(C) as to each of the Webb children. The fifth assignment of error is overruled.

Appellant's sixth assignment of error alleges:

"The trial court erred to the prejudice of respondent-appellant in finding the minor children to be neglected without making a specific finding of fact as to fault by the parent."

R.C. 2151.03 in part provided:

"As used in sections 2151.01 to 2151.54, inclusive, of the Revised Code, 'neglected child' includes any child:

"(A) Who is abandoned by his parents, guardian, or custodian;

"(B) Who lacks proper parental care because of the faults or habits of his parents, guardian, or custodian;

"(C) Whose parents, guardian, or custodian neglects or refuses to provide him with proper or necessary subsistence, education, medical or surgical care, or other care necessary for his health, morals, or well being;

"(D) Whose parents, guardian, or custodian neglects or refuses to provide the special care made necessary by his mental condition;

"(E) Whose parents, legal guardian, or custodian have placed or attempted to place such child in violation of sections 5103.16 and 5103.17 of the Revised Code." 133 Ohio Laws, Part II, 2040, 2045.

A finding of neglect under R.C. 2151.03 requires proof that parents were willfully at fault in abandoning or neglecting the children, or refusing to perform their parental duties. *In re Bibb, supra.*

Appellant argues the trial court erred in finding the children to be neglected in the absence of a finding that the parents were at fault in committing the abuse or in being aware of the abuse and allowing it to continue. Appellee and the *guardian ad litem* argue that, under the circumstances of this case, the parents must be presumed to have known of the abuse and were, therefore, at fault in failing to provide medical and psychological treatment for the children.

There is no finding by the trial court that the parents abused their children, knew of the abuse and allowed it to continue or that the condition of the children was such that the parents should have known of the abuse. Because the trial court did not find, and the evidence failed to establish, the willful disregard of a parental duty, the court erred in finding the children to be neglected. Appellant's sixth assignment of error is sustained. We point out, however, that the finding of dependency, and in the cases of Melissa and Michelle, the finding of abuse, allowed the trial court to proceed to the dispositional stage of the trial.

For his seventh assignment of error, appellant alleges the trial court erred in permanently terminating his parental rights and committing the children to appellee Hamilton County Department of Human Services. Appellant argues that the court erred in ordering permanent commitment because no effort had been made to reunite appellant with his children.

A juvenile court has the alternative immediately to grant permanent custody to an appropriate state agency upon determination that a child is abused, neglected, or dependent. R.C. 2151.353(A)(4); *In re Smart* (1984), 21 Ohio App.3d 31, 21 OBR 33, 486 N.E.2d 147. The record *sub judice* reveals that appellant continually refused to accept the medical evidence that his children were abused. Dr. Patrick H. Lagan, a psychiatrist who examined appellant, characterized appellant's relationship with his family as dysfunctional because of his emotional detachment. Dr. Lagan recommended extensive counseling for appellant in order to bring him to an acceptance of the fact that his children had been sexually abused.

During his testimony in the dispositional phase of the trial, appellant stated he had no problems to be addressed in counseling. He perceived his only problems to be obtaining housing and dealing with his anger toward the social workers who "tore up his life." He said he believed the statements made by

the children regarding the sexual abuse could be attributed to "coaching" by the social workers.

In addition, the evidence showed that the children adjusted well to their foster placement. The foster parent participated in the children's therapy, followed the therapist's recommendations and was able to deal with the children's behavior problems. Further, there was testimony that all of the children's needs were being met in the foster home. In light of all the evidence, we find the trial court did not abuse its discretion in permanently committing appellant's children. The seventh assignment of error is overruled.

■■■ Appellant's eighth assignment of error alleges the trial court erred in admitting into evidence certain videotaped interviews of the children. The eighth assignment of error is overruled because appellant has failed to provide a transcript of the videotape for our review pursuant to App.R. 9(A), which provides in pertinent part:

"When the transcript of proceedings is in the videotape medium, counsel shall type or print those portions of such transcript necessary for the court to determine the questions presented, certify their accuracy, and append such copy of the portions of the transcripts to their briefs."

Appellant's ninth assignment of error alleges:

"The trial court erred to the prejudice of respondent-appellant by considering the demonstrated ability and suitability of the foster mother as an adoptive parent."

■■■ Appellant's ninth assignment of error is overruled. Evidence of the bonding of the children with their foster care provider and evidence that the children have become integrated into a foster family may legitimately be considered in determining which dispositional alternative is in the children's best interests. *In re Justice* (1978), 59 Ohio App.2d 78, 13 O.O.3d 139, 392 N.E.2d 897. Further, evidence that the agency's plan, if permanent commitment is granted, would be to work toward the adoptive placement of the children as a sibling group, is relevant to the best interests of the children.

Appellant, for his tenth assignment of error, alleges:

"The cumulative effect of all error occurring at trial was such as to deny to respondent-appellant a fair trial on the issue of his right to parent his natural born children."

For the reasons set forth above under appellant's first nine assignments of error, appellant's tenth assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

SHANNON, P.J., KLUSMEIER and UTZ, JJ., concur.