JOURNAL ENTRY AND OPINION
This is an appeal from an order of Juvenile Court Judge William F. Chinnock. Appellant Junior Lane claims it was error to grant appellee Cuyahoga County Department of Child and Family Services (CCDCFS) permanent custody of his son, Robert Lane, because at the time of the custody proceedings he was a prison inmate in Grafton, Ohio; he was not properly served with motion of the permanent custody proceedings; he was not properly notified of the permanent custody proceedings; he was denied the right to appointed counsel, and CCDCFS failed to support its case by clear and convincing evidence. We agree Lane was not properly served and vacate the order.
On January 2, 1997 CCDCFS filed a complaint alleging that Robert Lane was a neglected child and requested his temporary custody. On January 6, 1997, with the child's mother, Nanette Combs, present, a magistrate held a preliminary hearing on the complaint and issued an emergency custody order for Robert pursuant to Juv.R. 13. A hearing was set for January 28, 1997, but was continued until March 10, 1997 because service was not perfected upon Combs and Lane. Although the record shows that CCDCFS acknowledged that Lane was the alleged father of the child and knew that he was in prison, it does not appear that any notice of this proceeding was attempted before January 28, 1997. A summons was issued to Lane prior to the March 10, 1997 hearing, but it is unclear whether or when it was served.
On February 5, 1997, CCDCFS filed affidavits for service by publication for both Combs and Lane, pursuant to Juv.R. 16, indicating the last known address listed for Lane was the Grafton Correctional Institution (sic) in Grafton, Ohio. It appears, however, that the address listed was that of the Lorain Correctional Institution, also in Grafton. The record does not reveal that service by publication for Lane was perfected. Despite the shortcomings in service about the March 10, 1997 hearing, Lane apparently received actual notice of the hearing because Jeffrey Kelleher appeared at that time and, according to Judge Timothy Cotner's journal entry, represented Lane. Following the hearing the judge adjudicated Robert a neglected child and committed him to the temporary custody of CCDCFS.
Lane claims that in August 1997 he filed a motion for appointment of counsel and an application for genetic testing to establish paternity, both accompanied by affidavits of indigency. Although he submitted dated and notarized copies of these documents for our review, the record does not reveal that they were filed. The record does show, however, that on October 24, 1997, Lane filed, pro se, a motion for natural father to communicate with the court. In his motion, Lane stated his desire to have the child placed with Pamela Lane, a paternal aunt. He alleged that CCDCFS was, initially, receptive to that placement but later rejected his sister as a possible custodian without explanation and he requested that the judge inquire into the possibility of granting such custody. Significantly, Lane also stated in this document that Jeffrey Kelleher, who appeared at the March 10, 1997 hearing, was his sister's lawyer.
On January 22, 1998, CCDCFS filed a motion to modify temporary custody to permanent custody, alleging that Combs had not complied with a case plan, continued to abuse drugs, and did not appear willing or able to care for the child at any future date. The motion further cited Lane's incarceration, and concluded that he would not be an appropriate custodian even if he was not incarcerated.[1] The motion was submitted to the court for service on the proper parties.
On February 11, 1998, Lane filed, pro se, a motion to proceed to judgment for placement of Robert Lane in the custody of Paternal Aunt, Pamela Lane. In addition to reiterating his desire to have the child placed in the custody of his sister, Lane stated that he was notified in August 1997 that CCDCFS intended to move for permanent custody, but that such motion had not yet been filed. Although file-stamped by the juvenile court on February 11, 1998, the journal entries reveal that this motion was not received or reviewed by the judge until April 10, 1998, two days after the hearing on CCDCFS's motion for permanent custody.
A hearing date, originally set for March 2, 1998, was changed to April 8, 1998 for undisclosed reasons.[2] The juvenile court issued a summons for Lane dated March 17, 1998, which summons announced the April 8 hearing date and attached a copy of the January 22, 1998 motion. The summons listed Lane's correct inmate number but the incorrect address for the institution in which he was incarcerated in Grafton. He received a copy of the summons, apparently by ordinary mail, on April 10, 1998. The record does not indicate the method of service used, does not show an attempt at personal or registered mail service, nor is any return of service on file for Lane.
A summons issued to attorney Kelleher resulted in a handwritten return of service filled out by a process server which indicated it was served at Kelleher's office on March 31, 1998, by leaving it on a desk. Although the form used by the process server has space for the signature of the person served or for a description of the person if no signature is obtained, the form contains neither signature nor description, indicating that the summons was not served on a person, but simply left at an empty desk.
On April 8, 1998, Judge Chinnock held the permanent custody hearing with only CCDCFS' attorneys and the child's guardian ad litem. The transcript reveals at the start of the hearing:
THE COURT: We have service?
MR. MILKES [attorney for CCDCFS]: Yes Your Honor.
THE COURT: On everyone?
 MR. MILKES: That's the way it appears. That's the way it appears, Your Honor.
 MS. LEDERMAN [guardian ad litem]: Combs is the mother and Lane is the father.
At the hearing a social worker briefly testified followed by a recommendation from the guardian ad litem in favor of granting CCDCFS permanent custody and the judge granted the motion.
Lane's first assignment of error states:
 I. THE APPELLANT WAS NOT SERVED WITH NOTICE OF A PERMANENT CUSTODY HEARING UNTIL AFTER THE PERMANENT CUSTODY WAS HELD.
The proceedings in this case reveal one dispositive fact; Lane did not receive proper notice of CCDCFS' motion for permanent custody or the hearing on that motion. Not only does the record prove that service was not perfected, it reveals that proper service was never attempted. We reject CCDCFS' attempt to defend the improper service here. The fact that a party to a juvenile court proceeding is a prison inmate does not mean that improper service of process can be ignored.
When CCDCFS files a motion to modify a temporary custody order to permanent custody, notice of that motion must be served in accordance with R.C. 2151.29 and 2151.414. These statutory notice provisions bear directly upon the filing of CCDCFS motions; the department is or should be intimately aware of the statutory provisions. R.C. 2151.414(A)(1) states as follows:
 Upon the filing of a motion * * * for permanent custody of a child, the court shall schedule a hearing and give notice of the filing of the motion and of the hearing, in accordance with section 2151.29 of the Revised Code, to all parties to the action and to the child's guardian ad litem.
Thus, CCDCFS knew that R.C. 2151.29 controlled the manner of service of its motion to Lane, it made no attempt to argue that the service provisions of R.C. 2151.29 were satisfied, and failed even to acknowledge the existence of the statute in its brief before this court. R.C. 2151.29
requires service as follows:
 Service of summons, notices and subpoenas * * * shall be made by delivering a copy to the person summoned, notified, or subpoenaed, or by leaving a copy at his usual place of residence. If the juvenile judge is satisfied that such service is impracticable, he may order service by registered or certified mail.
The service to Lane did not comply with these requirements; no personal service was attempted, and no record that the judge authorized service by registered or certified mail. Even if there had been such an order, registered or certified mail service was not attempted. The notice was sent by ordinary mail to the wrong address, and reached Lane two days after the hearing.
CCDCFS contends the record clearly shows that the court sent notice to Lane on March 17, 1998, and claims that he failed to prove that he did not receive service. However, even if we were to accept CCDCFS' tortured representation of the record,[3] the agency still fails to cite any authority placing the burden of proving the failure of service upon the party being served. Receipt of notice is rebuttably presumed only when applicable service provisions have been followed. Rafalski v. Oates (1984), 17 Ohio App.3d 65, 66, 477 N.E.2d 1212, 1214; Grant v. Ivy (1980), 69 Ohio App.2d 40, 42, 429 N.E.2d 1188, 1190.[4] What is clearly shown in the record is that Lane was not served in compliance with R.C. 2151.29. Where these provisions have not been followed, we will not presume proper service.
Court rules and statutes are designed to obtain proof of constructive, if not actual, notice of proceedings. Where these provisions have been ignored, there is no record of service on which to base a presumption. In these circumstances it would be nonsensical and unfair to require Lane to prove lack of service. CCDCFS can overcome the failure of proper service only by showing he waived the requirement. In re Frinzl (1949),152 Ohio St. 164, 172, 87 N.E.2d 583, 587. Waiver might be found where the party had actual notice of the hearing, was represented by counsel, and appeared and defended. In re Webb (1989), 64 Ohio App.3d 280,284-85, 581 N.E.2d 570, 573. Proof of actual notice requires timely knowledge of all the provisions listed in R.C. 2151.414(A)(1), not simply notice that a hearing will be held. Id.; see, also, Frinzl,152 Ohio St. at 173, 87 N.E.2d at 588 (notice of hearing to modify temporary custody to permanent custody must be made strictly in accordance with law.) CCDCFS has shown neither Lane's actual notice nor waiver of service requirements.
The court's attempt to serve attorney Kelleher was not service to Lane, and does not show that Lane had actual notice. R.C. 2151.29
specifically requires that the summons or notice be delivered to the person summoned, notified, or subpoenaed. (Emphasis added.) Therefore, the attempt at serving a lawyer did not satisfy the duty to serve the party, Lane, and the failure to show that Kelleher or any other person received the notice also casts doubt on whether Kelleher himself received notice. Furthermore, the judge could not be justified in believing that Kelleher represented Lane, because Lane had filed at least two pro semotions since March 10, 1997, at least one of which was brought to the judge's attention prior to the motion for permanent custody. Therefore, an attempt to serve Kelleher fails to show any evidence that Lane had actual notice of the April 8, 1998 hearing.
CCDCFS next argues that proper service was proven through the transcript cited above, in which the judge asked the two attorneys present whether service had been perfected on all parties, and the attorneys responded affirmatively. CCDCFS claims, again without citing authority, that the judge had discretion to determine whether all parties were served properly, and that he did not abuse that discretion when he proceeded with the hearing. However, even assuming that such a decision was discretionary, the record here absolutely shows that Lane was not served properly. There is no proof of service in the record, and no showing of actual notice. The juvenile court bore the duty of service under R.C. 2151.29 and 2151.414, and the judge had no business relying on CCDCFS' attorney or the guardian ad litem to tell him whether service had been perfected.
CCDCFS finally suggests that, because Lane is only the child's alleged father, he was not entitled to service, which is wholly inconsistent with the facts of these proceedings. Lane was considered a party to the action from the beginning, and was issued notice as the child's parent or as a person that the court determined was a proper or necessary party to the proceedings. R.C. 2151.28. No one challenged Lane's status as father and, in fact, both CCDCFS and the guardian ad litem have all but conceded the fact because, when the judge questioned the attorneys concerning service, the guardian ad litem informed the judge that Lane was Robert's father. Once properly included as a party, Lane cannot be summarily excluded simply because someone failed to ensure his proper service.
Until all parties were notified, the juvenile court lacked jurisdiction to proceed on CCDCFS' motion for permanent custody. In re Miller (1986),33 Ohio App.3d 224, 225-26, 515 N.E.2d 635, 638; Frinzl, paragraph one of the syllabus. The ruling on the motion is void. Miller, supra; Frinzl,152 Ohio St. at 177, 87 N.E.2d at 589. The first assignment of error has merit.
Lane's second and third assignments of error state:
 II. THE APPELLANT WAS NOT AFFORDED HIS RIGHT TO COUNSEL BY THE TRIAL COURT IN A PERMANENT CUSTODY HEARING.
 III. THE AGENCY FAILED TO PROVE ITS CASE BY CLEAR AND CONVINCING EVIDENCE.
While we need not address these assignments of error in light of our decision above (App.R. 12), we reiterate that the record does not contain Lane's request for counsel, and note that the notice of hearing must contain a full explanation of [the party's] right to be represented by counsel and to have counsel appointed * * * if they are indigent[.] R.C.2151.414(A)(1). The requirement implies that should Lane request counsel after receiving notice of the motion and hearing, such request can be accommodated in a manner that gives meaning to the right to counsel. Obviously a hearing could not go forward in the absence of a ruling on a timely request for counsel, nor could a hearing properly be scheduled in derogation of appointed counsel's reasonable ability to prepare. Thus the absence of any record showing Lane's prior request for counsel should not prejudice his right to request and obtain appointed counsel in any further proceedings.
We vacate the judgment granting CCDCFS permanent custody of Robert Lane, reinstate the order granting it temporary custody and remand.
It is ordered that the appellant recover from appellee his costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ____________________________ ANNE L. KILBANE, JUDGE
PATRICIA ANN BLACKMON, J., CONCUR; JOHN T. PATTON, P.J., CONCURRING IN JUDGMENT ONLY.
[1] Although the motion is based on a social worker's sworn statements, the affidavit does not appear based solely on facts within the affiant's personal knowledge.
[2] Lane is not on the list of parties served or attempted to be served for the March 2, 1998 hearing date.
[3] As already noted, the record also clearly shows that statutorily appropriate service methods were not attempted, that no return of service or other proof of service was obtained, that the notice was misaddressed, and that service of the original complaint was defective as well.
[4] Grant also shows that even if CCDCFS had shown even a semblance of proper service, the record rebuts any presumption of receipt; evidence that service was sent to the wrong address is sufficient to rebut the presumption. Id. at 42-43, 429 N.E.2d at 1190-91.