OPINION AND JUDGMENT ENTRY
This case is on appeal from the June 9, 1998 judgment of the Lucas County Court of Common Pleas, Juvenile Division, which granted permanent custody of James C., Kerrie H., and Ryan C. to the Lucas County Children Services Board (hereinafter "the agency") and terminated the parental rights of appellant, Dawn C. Appellant asserts the following assignments of error on appeal:
 "I. THE TRIAL COURT'S GRANT OF PERMANENT CUSTODY WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.
 "II. LCCSB RELIED EXCESSIVELY ON HEARSAY EVIDENCE TO MEET ITS BURDEN OF PROOF.
 "III. LCCSB FAILED TO PROVIDE APPELLANT WITH REASONABLE CASE PLANNING NECESSARY FOR BATTERED WOMEN.
 "IV. THE TRIAL COURT'S DENIAL OF ALL CONTACT BETWEEN APPELLANT AND HER CHILDREN WAS IMPROPER AND PREJUDICIAL.
 "V. THE TRIAL COURT'S DETERMINATION THAT THE CHILDREN WERE DEPENDENT CHILDREN WAS ERROR."
In 1997, the agency filed a complaint in dependency and neglect, seeking permanent custody of James C., Kerrie H., and Ryan C., appellant's natural children. The following are the stipulated facts in this case. The parents have a history of domestic violence, substance abuse, and neglect of these children. The children were determined by the court to be dependent and neglected children in 1994 and 1996. Legal custody of the children had been awarded to the maternal grandparents on September 17, 1996. The parents did not participate in case plan services after the children were removed. The agency was given temporary custody of the children after the maternal grandparents expressed that they no longer wished to have legal custody of the children because they are acting out sexually and because of other behaviors. Kerrie H. was expelled from kindergarten for stealing and lying.
The first adjudication and disposition order of the court was vacated on the ground that appellant had not received proper service. Following a second adjudication hearing, the court found in its June 9, 1998 judgment that the children are dependent. Appellant stipulated to the facts stated above and to the finding that the children are dependent based upon those facts. The court immediately proceeded to disposition finding that the children could not be placed with either parent within a reasonable period of time and that it would be in the best interest of the children to be placed in the permanent custody of the agency. The court found that reasonable, but unsuccessful, efforts had been made to prevent the removal of the children. The court also found that the reasons for removal of the children from the home had not been remedied. Furthermore, the court found that the parents demonstrated a lack of commitment to the children and an unwillingness to provide an adequate permanent home.
The following evidence was presented during the disposition phase of the hearing.
Karen Holland, a caseworker for the agency, testified during both the adjudication and disposition phases of the hearing. She testified that the agency's records indicate that when the children were removed in February 1994, they were placed with appellant's mother, and the agency referred appellant to counseling, parenting classes, and substance abuse assessment and treatment. As of July 1994, appellant had not participated in these services. The agency then took temporary custody of the children. The same referrals were made again. This time, appellant participated in the services. Reunification was completed in January 1996, and the children were returned to appellant's home under the protective supervision of the agency until May 1996.
Ann Evans, a clinical therapist at Harbor Behavior Health Care, testified that she counseled the parents from September 1994 until February 1995 regarding domestic violence and substance abuse issues. At the end of the sessions, the parents stated that there was no abuse and that they had agreed to work things out. Evans did not observe any evidence of physical abuse during that time.
Candace Salter, a therapist with Harbor Behavioral Health Care, testified that she counseled appellant from July 1995 until September 1996 for nineteen sessions. During the first three-to-four months, appellant progressed well. She attended regularly until the children were returned to her. At that time she expressed that she felt strong enough to handle things on her own and came only when she felt it was necessary. Salter did not prefer the arrangement because appellant had no support system. However, Salter also knew that appellant had a time conflict because of a new job and would already be under additional pressure. Salter was also concerned because appellant had began a relationship with another man. This man was involved in some drug or alcohol recovery program and did not appear to be stable enough to support her. Their meetings ended in April 1996.
Holland became involved in the case in June 1996 when allegations of dependency and neglect were raised. The children were again taken into emergency shelter care because they had inadequate housing (no working utilities and were in the process of being evicted); they had been involved in two automobile accidents with appellant, who had been driving without a license or insurance; and their father had smashed in the door and some windows of their home. Temporary custody of the children was granted to the agency.
The agency recommended, but did not require, that appellant reenter the same services that she completed: domestic violence counseling and parenting classes. At that time, appellant admitted to Holland that there had been ongoing domestic violence prior to May 1996 even though appellant had told the therapist otherwise. The children confirmed that they were present during these fights.
The children were initially place with an aunt. However, she later contacted the agency and told them that she did not want custody because she could not control appellant's visitation. In July 1996, Holland discussed with appellant the concerns of the agency regarding her substance abuse and the fact that she was living with someone accused of sexual abuse of a child. They met in August 1996 to discuss the issue of the agency seeking permanent custody. At that time, Holland attempted to find out what appellant believed were the reasons why she could not provide the children with a stable and safe home. Appellant admitted at that time that her boyfriend had physically abused her and, with her permission, had hit the children. Appellant called two days later and said that she was attempting to reconcile with her husband.
The agency began to file for permanent custody, but dropped the case when appellant agreed to give custody of the children to her father and his spouse. Legal custody was transferred to the grandparents in September 1996. After placement with the grandparents, the case was closed and appellant made no contact with the agency.
In September 1996, appellant called Salter to re-engage counseling at Harbor. She received a psychological evaluation, which resulted in a referral to individual counseling. However, she failed to show up for counseling sessions and her case was eventually closed. From their conversation, Salter concluded that appellant could not sustain the progress she had made without some support system. Appellant did not trust her father and stepmother because they were pressuring her to reunite with her husband. Salter was also concerned about directing appellant to her family for support when it appeared that they had unhealthy behavior habits such as alcoholism. Salter still had concerns about appellant's parenting skills because she seemed unable to make decisions without being influenced by others.
Holland testified that in February 1997, the grandparents contacted the agency and indicated that they could not control the children's behaviors. They described the children as disruptive. They also stated that after the four visits by appellant, the children were more difficult to control. Appellant was given other opportunities to visit the children, but did not because of transportation problems. Appellant did, however, call the children. The grandparents stated that the children lied, stole, and acted out sexual behaviors. The grandparents refused to participate in counseling to help the children. Kerrie H. had been placed in a developmental kindergarten because of her lying, stealing, and inability to work.
The agency again filed a complaint for permanent custody, obtained temporary custody of the children and a no contact order with the parents, and enrolled the children in counseling and therapy. Since that time, the boys have been placed in three different foster homes, and the girl has been placed in two.
Holland testified that even as of the summer of 1997, the agency still had concerns about appellant's home because she was living with a man who had been accused of a sexual offense against a child. Appellant also admitted marijuana use. She stated to Holland that she believed that what she did when her children were not around was her business. As of January 1998, appellant had not complied with the agency's required services. She had received a substance abuse assessment in February 1998, but never completed treatment. She also had a behavioral assessment completed, but only attended one therapy session.
Michelle Ventresca, a caseworker for the agency, testified that she was involved in this case from February 10, 1998 until March 23, 1998. During this period, the mother called and requested a referral for a drug assessment. The mother attended the assessment, but because of the agency's mistake, only half of the assessment could be done at that time. That portion of the assessment consisted of a self-reporting of drug and alcohol use. The mother did not attend a second scheduled meeting to complete the assessment.
Holland testified that during the several months prior to the adjudication/disposition hearing, appellant had contacted Holland once about the welfare of her children. She did contact Holland on several other occasions regarding her progress in the recommended services.
Holland had visited appellant in her current home. It was a nice apartment, with nice furniture in the living room and bedroom only. Holland did not see any food and only minimal cooking equipment. It did not appear to her that anyone actually lived in the apartment. Holland also testified that appellant had been employed for the five months prior to the hearing.
Nonetheless, Holland recommended permanent custody be given to the agency because appellant has not remedied the problems that caused the children to be taken into custody; the services provided do not appear to help appellant; the children have been moved too many times to different families; and the children need stability and freedom from domestic violence. Holland believes that appellant is apparently unable to use good judgment and decision making skills where the protection and safety of her children are involved.
The guardian ad litem testified as follows. Appellant has had stable housing for the past year but, prior to that, moved frequently. Appellant still needs treatment but has failed to follow through with her most recent therapy. She has had four years to get herself under control, but is still unable to follow through. The two older children voice a desire to be adopted by their current foster parents. They did not want to go home. The guardian ad litem believed that appellant's parental rights should be terminated because of her current problems; her lack of commitment in following through with therapy; her association with the wrong type of men; and because she drove the children without a license and insurance.
The following evidence was presented regarding the children. James Best, a social worker for Family Services of Northwest Ohio, testified that from July 1997 until March 1998, he counseled James C. and Ryan C. Initially, James C. was very sad and despondent, dissociative, shameful, had night terrors, was stealing from his foster parents and day care, and had encopresis. James C. felt that he needed to protect his brother and sister. Ryan C. was also very emotionless, but he was excitable and restless as well. He was scared often, had nightmares, felt shame, had encopresis, and had violent outbursts. Both boys accused their father of hitting them. Best met Kerrie H. for a total of one hour. During this time, Best found that she was very open. There were allegations that James C. and Kerrie H. were acting out sexually when they became afraid at night. Best could not find a cause for this behavior. The children complained to him at least five times that their parents physically abused each other; but, they would talk about it as a matter of fact and did not seem bothered by it.
Best believed that many of the negative behaviors had subsided or lessened by the time counseling was completed. Best believed that the foster parents from July to approximately November 1997 had been too overwhelmed to properly care for the children. He also believed that the children were better off with their current foster parents who were very involved with their therapy. The children had made great progress because of them. Best also testified that he never met the natural parents. The children were transferred to another therapist closer to the home of the foster parents.
Michelle Klinger, the director of the Betty Jane Center, testified that she took over the counseling of the children in February 1998. Her initial opinion was that they were well behaved. They told her that they had a lot of responsibilities when the lived in their biological homes. Kerrie H. said that she had to cook for her brothers, although she could only have been four at the time. Ryan C. said that he had to do the laundry and other chores. James C. told her that he had been hit with a baseball bat by his mother. Ryan C. told that his father had shot Ryan C.'s puppy after it bit Kerrie H. However, the children did not dwell on abuse issues. Interaction with the foster parents was good. Interaction between the siblings was pretty good. She intended to keep working with the children and foster parents to ensure that the children never blame themselves for what happened, to counsel the foster parents regarding parenting skills, and to help the children learn to control their emotions.
Felicia Allen-Cox, a mentor for women at the Family Services of Lucas County, testified that appellant contacted her in December 1997 for help. Since that time, appellant has met with Allen-Cox weekly. Allen-Cox has also visited appellant's home, which was always clean. She did not observe anything that would lead her to suspect that appellant lives with a man or uses alcohol or illegal drugs. Appellant told Allen-Cox that her children had been taken away because she didn't do the right things, but that if she could do it over again, she would do it right.
Sherry Bissell testified that her son is a nephew to the parents in this case. She had lived with the father's stepbrother and had a child with him. She further testified that she contacted Holland in February 1997 about adopting the children. She later decided not to go through with it because Holland had discouraged her. Holland had told her that because Bissell was good friends with the father, he and/or appellant might visit after the children were adopted. Bissell did not believe that the agency would approve of the adoption. She did not want to start the process and then lose the children. She also admitted the adoption caseworker expressed a concern about Bissell's boyfriend being an alcoholic.
This permanent custody case was initiated by the filing of a complaint pursuant to R.C. 2151.27. The disposition of a child determined to be dependent under such proceedings is controlled by R.C. 2151.35. The court may enter any order of disposition provided for in R.C. 2151.353. R.C. 2151.35(B) (3). If the court desires to grant permanent custody to the agency, it must determine: 1) pursuant to R.C. 2151.414(E), that the child cannot or should not be placed with one of his parents within a reasonable time; and 2) pursuant to R.C. 2151.414(D), that the permanent commitment is in the best interests of the child. R.C.2151.353(A) (4).
R.C. 2151.414(E) provides that the court may consider all relevant evidence when it determines whether or not the children can be or should be placed with a parent within a reasonable period of time. The standard of proof required by the statute is clear and convincing evidence. R.C. 2151.414(E) and Inre William S. (1996), 75 Ohio St.3d 95, syllabus. However, if the court finds that any one of the sixteen factors listed in the statute exist, the court must find that the child cannot be placed with the parent within a reasonable time. The factors at issue in this case are as follows:
 "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
"* * *
 "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
"* * *."
On appeal, a reviewing court must determine if the lower court complied with these statutory requirements and whether there was sufficient competent and credible evidence to support a finding that the clear and convincing burden of proof was met. Inre Lewis (Apr. 30, 1997), Athens App. No. 96CA1760, 96CA1763, unreported; and In the Matter of Dixon (Oct. 9, 1992), Erie App. No. E-91-55, unreported. See, also, In re Adoption of Holcomb
(1985), 18 Ohio St.3d 361, 368.
Appellant asserts three separate issues within her first assignment of error that the court's disposition order was erroneous. First, she argues that there was not clear and convincing evidence to support the court's finding that the two factors under R.C. 2151.414(E) quoted above existed.
With respect to the R.C. 2151.414(E) (1) factor, failure to remedy the cause for removal, we agree with appellant that the court erred in finding that this factor had been proven. There was no case plan developed under the most recent removal of the children that gave appellant an opportunity to remedy the situation so that her children could be returned to her.
We recently addressed this issue In the Matter of MarkH. (Apr. 30, 1999), Lucas App. No. L98-1238, unreported. In that case we explained that:
 "R.C. 2151.414(E) (1) requires that the agency provide a case plan and time to remedy the situation that led to the removal of the children from the household. The other factors listed in R.C. 2151.414(E) do not require a case plan nor time to remedy the situation. In re Brandon O. (Jan. 31, 1997), Lucas App. No. L-96-115, unreported. The situation referenced in this statute is the current situation only. In the prior case, appellant met the goals set for her and her children were returned to her without any conditions. The case plan relating to that prior custody case cannot be used against appellant in this case."
We held that the juvenile court erred when it concluded that R.C. 2151.414(E) (1) had been proven when there was no case plan nor time for appellant to correct the situation which caused the removal of her children before the agency filed for permanent custody. We noted that an agency need not give every parent an opportunity to correct the situation that caused the removal of their children; but, if the agency seeks to argue that the parent did not rectify the causes for removal, then it must have given the parent a case plan and opportunity to do so.
In this case, the agency determined that it would not provide appellant with a case plan outlining the specific behaviors she needed to correct in order to be reunited with her children. Instead, they placed the burden on her to identify what services she needed to enable her to be a fit parent. We find that because the agency chose not to provide appellant with case plan objectives, it cannot later use appellant's failure to participate in certain services as evidence that she failed to remedy the problems that initially caused the children to be placed outside the home. Appellant's prior case plan cannot be used against her in this case since she sufficiently complied with that case plan to be reunited with her children. Therefore, we find that the agency did not prove by clear and convincing evidence that it diligently assisted appellant when it refused to develope a case plan for her.
As to the R.C. 2151.414(E) (4) factor, unwilling to provide an adequate home, the court found that appellant demonstrated a lack of commitment toward the children by her unwillingness to provide an adequate permanent home for the children. Appellant argues that she was not unwilling to provide for her children. She points to her efforts to re-engage counseling, voluntary attendance at a domestic violence support and mentoring program, voluntary attendance at a parenting class, psychological evaluation, and a substance abuse assessment. She contends that she is unable rather than unwilling to provide an adequate home and, therefore, the court could not find that this factor had been proven. She relies upon our decision in In reShawnta J. (Mar. 31, 1998), Lucas App. No. L97-1233, unreported.
We agree with appellant that the statute requires that the parent be unwilling, not unable, to provide an adequate home for the child. In re Shawta J., supra. But we disagree with appellant that the court in this case found that she was unable to provide an adequate home. The court clearly states that it found that appellant was unwilling to provide an adequate home based upon the fact that she did not seek and/or complete the necessary services and the fact that the children became dependent a second time. We find that there was clear and convincing evidence from which the court could conclude that appellant was unwilling to provide an adequate home for her children.
While we agree that the court could not find that R.C.2151.414(E) (1) was proven in this case, we find that R.C.2151.414(E) (2) was proven. Therefore, the trial court's finding that one of the sixteen factors listed in R.C. 2151.414(E) existed was supported by clear and convincing evidence, and the court was required to find that the children cannot be placed with appellant within a reasonable time.
The second issue raised within appellant's first assignment of error is that the trial court erred when it found that it was in the best interest of the children to terminate appellant's parental rights. She argues that the court's generalized statements about adoption and the need for stability are insufficient to find that the court considered all of the factors of R.C. 2151.414(D) as to each child.
R.C. 2151.414(D) requires that the court find that the permanent commitment is in the best interests of the child after consideration of the following factors: (1) the interaction and interrelationship of the child with all persons who significantly affect the child; (2) the wishes of the child; (3) the custodial history of the child; and (4) the child's need for legally secure placement and whether it can only be achieved through a grant of permanent custody to the agency.
The statute does not require that the court set forth the specific factual findings that correlate to the factors set forth in the statute unless a party requests findings of fact and conclusions of law. In re Covin (1982), 8 Ohio App.3d 139, 141, and In re Brandon M. (Apr. 17, 1998), Lucas App. No. L-97-1144, unreported. However, if it is clear from the judgment entry that the court did not consider these factors, its judgment must be reversed. In re Brown (1994), 98 Ohio App.3d 337, 343.
Appellant argues that this case is identical to theBrown, supra, case cited above. We disagree. In Brown, supra, the court failed to cite the statute and the appellate court could not determine from the judgment whether the lower court ever considered the statutory factors of R.C. 2151.414(D). In the case before us, the court specifically stated in its judgment that it found "pursuant to ORC 2151.414(D) [that] an award of permanent custody to LCCS is in the children's best interest." The court also stated that these children are adoptable, that there is a potential adoptive home, that an award of permanent custody would facilitate that adoption, and that the award of permanent custody would give the children a legally secure and permanent home. While it is true that adoption is no longer a consideration under the statute, it can be a part of the fourth factor of whether termination of the parental rights will enable the agency to provide legally secure placement. Furthermore, since appellant never filed a request for findings of facts, the court did not need to include in its judgment any statement other than the fact that it did consider the factors of R.C.2151.414(D). We find that the second issue raised under appellant's first assignment of error has no merit.
Finally, appellant argues within her first assignment of error that there was no clear and convincing evidence that the agency used diligent efforts and reasonable case planning to reunite the family or that to do so would have been futile. She argues that the agency must seek reunification unless it would be impossible.
We have already addressed this issue in In re Shawn W.
(Sept. 30, 1996), Lucas App. No. L-95-267, unreported, where we held that R.C. 2151.353(A) (4), which permits the court to order that a child be committed to the permanent custody of a public children services agency, does not require that the court find that reunification with the parents would be futile. The statute requires only that the court find that "* * * the child cannot be placed with one of the parents within a reasonable time* * *or should not be placed with either parent * * *." R.C. 2151.353(A) (4).
Appellant's reliance on the cases she cited is misplaced because those cases involve cases where the agency filed a motion for permanent custody rather than a complaint for permanent custody. When permanent custody is sought by motion, R.C.2151.419 is applicable. In re Cook (Oct. 8, 1998), Hancock App. No. 5-98-16, unreported; In re Dylan B. (Nov. 6, 1998), Lucas App. No. L-98-1018, unreported; and In re Combs (July 10, 1998), Miami App. No. 97-CA-60, unreported. That statute is not applicable, however, when the agency seeks permanent custody in its complaint for dependency, neglect, or abuse. In re Baby Girl Baxter (1985),17 Ohio St.3d 229, paragraph two of the syllabus; In re Moloney
(May 14, 1986), 24 Ohio St.3d 22, 26; and In re Jayson M. (July 9, 1999), Lucas App. No. L-98-1404, unreported. Our statement of the law regarding this issue in In Re Christopher H. (Apr. 23, 1999), Lucas App. No. L-98-1253, unreported, was erroneous.
Only one of the cases cited by appellant, In re RichardI. (Dec. 14, 1994), Montgomery App. No. 14140 and 14200, unreported, might be a complaint for permanent custody case. However, the facts in that case are unclear. Nonetheless, since the holding in that case is contrary to the Ohio Supreme Court cases cited above, we find that it is not persuasive authority to support appellant's position.
The third issue raised under appellant's first assignment of error also has no merit. Accordingly, appellant's first assignment of error is not well-taken.
In her second assignment of error, appellant argues that the trial court erred when its decision was substantially based upon hearsay evidence. Since appellant stipulated to finding that her children were dependent, this assignment of error relates solely to the disposition hearing. The Rules of Evidence are not applicable in the disposition hearing on a complaint for permanent custody. R.C. 2151.35(B) (2) (b), Juv.R. 34(B) (2) and (I); and Inre Baby Girl Baxter (1985), 17 Ohio St.3d 229, 233. Therefore, we find appellant's second assignment of error not well-taken.
In her third assignment of error, appellant argues that the trial court erred in terminating her parental rights when the agency did not provide adequate services to enable her to be reunited with her children. Appellant asserts that the agency never provided her services to overcome her alleged "battered women's syndrome." She further asserts that after obtaining such services on her own, she is now fully capable of caring for her children.
As we discussed above, since this case was initiated as a complaint for permanent custody, the agency did not have to provide case plan services for appellant. Furthermore, her performance during prior case plan services could not be used against her once her children were returned to her. Therefore, whether the agency provided appropriate services to her is not a relevant issue in this case. Whether or not appellant suffered from battered women's syndrome was relevant evidence that appellant could, and did, present at the disposition hearing regarding whether she was willing to provide for her children. Appellant's third assignment of error is not well-taken.
In her fourth assignment of error, appellant argues that the trial court's order to cease all contact between appellant and her four children at the shelter care hearing was improper and prejudicial.
At the shelter care hearing Karen Holland testified that the grandparents had told her that appellant had disrupted the placement with the grandparents by telling the children that they would be returning to live with her. She also testified that the grandparents stated that the children were acting out sexually. Based upon this testimony alone, the court issued a temporary no contact order between appellant and her children. Appellant never filed a motion to modify this order.
During a shelter care hearing, the juvenile court may issue a temporary order eliminating visitation between parent and child if such an order would be in the best interest of the child. R.C. 2151.33(B) (1) (c). Appellant has not demonstrated that the juvenile court abused its discretion by issuing the temporary order. Furthermore, a parent may move at any time to have the temporary visitation order modified. In this case, appellant did not. Having failed to raise this issue in the trial court, appellant has waived her right to assert it on appeal. In re Adoption of McDermitt (1980), 63 Ohio St.2d 301,307. Appellant's fourth assignment of error is not well-taken.
In her fifth assignment of error, appellant argues that the trial court's determination that her children were dependent was erroneous. She argues that the facts to which she stipulated do not support the statutory elements of dependency because she believes that she remedied the circumstances that required her children to be removed from her home as of the date of the adjudication/disposition hearing.
The Ohio Supreme Court held in In re Kronjaeger (1957),166 Ohio St. 172, paragraph two of the syllabus, that the determination of whether a child is neglected is to be determined as of the date of the hearing. However, this holding was negated by the 1969 amendment to R.C. 2151.23(A) (1). In re Sims (1983),13 Ohio App.3d 37, 43 at fn. 1; In re Hay (May 26, 1995), Lawrence App. No. 94CA23, unreported, and In re Fadley (Feb. 18, 1985), Licking App. No. CA-3079, unreported at fn. 1.
R.C. 2151.23(A) (1) provides that the juvenile court has exclusive original jurisdiction "[c]oncerning any child who on or about the date specified in the complaint is alleged to be a * * * dependent child." Therefore, the date specified in the complaint becomes the critical factor that gives the court jurisdiction over the child. The function of the adjudication hearing is to determine whether the allegations of the complaint are true and whether the child was in fact a dependent child on or about the date alleged in the complaint. In re Sims, supra; In re Hood
(July 3, 1991), Summit App. No. 14957, unreported; In re AdkinsChildren (Feb. 22, 1988), Butler App. No. CA87-03-038, unreported; and In re Nichols (Nov. 23, 1983), Lawrence App. No. 1649, unreported.
However, other courts continue to hold that the court must determine whether the child is dependent as of the date of the adjudication hearing but do not give a justification for this holding. In re Bishop (1987), 36 Ohio App.3d 123, 125-126; In reJustice (1978), 59 Ohio App.2d 78, 80; In re Kasler (June 5, 1991), Athens App. No. CA 1476, unreported; and In re Branham
(Feb. 2, 1989), Paulding App. No. 11-88-4 and 11-88-5, unreported. This court previously held this view as well. In re Whiteman
(June 30, 1993), Williams App. No. 92WM000009, unreported. However, upon further consideration, we find that the court must make its determination of dependency based upon the facts that existed as of the date specified in the complaint. Therefore, in this case, any actions by appellant that occurred after her children were removed from her home is irrelevant to the determination of the dependency of the children.
Furthermore, since appellant stipulated to the facts and allegations of the complaint, she cannot now challenge that the agency failed to prove that her children were dependent. A stipulation to an allegation of a complaint relieves the party who bears the burden of proving that allegation from proving it because it is a substitute for evidence. Peters Motors, Inc. v.Rodgers (1954), 161 Ohio St. 480, paragraph two of the syllabus and In re Ware (July 17, 1980), Cuyahoga App. No. 40983, unreported.
Appellant's fifth assignment of error is not well-taken.
Having found that the trial court did not commit error prejudicial to appellant, the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Pursuant to App.R. 24, appellant is hereby ordered to pay the court costs incurred on appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 _______________________________ Peter M. Handwork, P.J. JUDGE
 _______________________________ Melvin L. Resnick, J. JUDGE
 _______________________________ Mark L. Pietrykowski, J. JUDGE
CONCUR.
 COURT OF APPEALS OPINIONS AUGUST 20, 1999