DECISION
Appellant, Valerie Williams, appeals from judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, addressing custody and dependency issues relating to her two children, Steven and Mindy.
This matter was initiated in separate proceedings on behalf of the two children. Franklin County Children Services ("FCCS") filed a complaint on December 6, 1999, alleging that Mindy Williams, born September 10, 1999, was a dependent child pursuant to R.C. 2151.04(C). The complaint alleged that the best interests of the child warranted that the state assume the child's guardianship based on circumstances including the fact that appellant's whereabouts were unknown and Mindy's putative father, Leroy Hunt, also could not be located. The complaint further asserted that appellant had a long history of mental illness, had been diagnosed with bipolar disorder, auditory hallucinations, a personality disorder, and possible organic brain trauma. The complaint alleged that FCCS personnel had observed erratic, inappropriate or ineffective behavior on appellant's part when caring for Mindy, including verbal abuse towards a caseworker. Mindy was placed in the temporary custody of FCCS on December 7, 1999, and appellant was given supervised visitation. In a March 6, 2000 decision, a magistrate determined that appellant had been diagnosed with bipolar disorder, had been on medication for her mental health problems since the age of 17, and that appellant had demonstrated a lack of emotional stability, attentiveness to the child's needs, and lack of bonding with Mindy such that Mindy should be found to be a dependent child and committed to the temporary custody of FCCS. Mindy was placed in the home of Delina Hunt, appellant's maternal cousin.
During the course of the above proceedings, appellant had given birth to Steven Williams on July 4, 2000. On December 28, 2000, FCCS filed a new complaint alleging that Steven should be determined a dependent minor. The complaint restated the allegations regarding appellant's mental health problems and specifically alleged that the putative father, Leroy Hunt, was at that time incarcerated.
An annual review hearing on Mindy Williams' case, including a motion by Delina Hunt for alternative disposition and custody of Mindy, was heard before a magistrate in conjunction with FCCS's complaint for temporary custody of Steven. Testimony was heard and proceedings conducted on January 30, 2001, January 31, 2001 and February 5, 2001. On February 12, 2001, the magistrate rendered a decision terminating the temporary custody of FCCS with respect to Mindy and granting legal custody of Mindy to Delina Hunt. The magistrate's decision also found Steven Williams to be a dependent minor.
Appellant timely filed objections to the magistrate's decision, which were overruled by the trial court in a decision and judgment entry entered July 10, 2001. Appellant has timely appealed and brings the following two assignments of error:
 I The adjudication of the juvenile court is not supported by clear and convincing evidence, and/or is against the manifest weight of the evidence.
 II The trial court erred in granting legal custody of the child to a non-parent when not supported by the evidence.
Appellant's two assignments of error present interrelated issues and will be addressed together. Pursuant to R.C. 2151.04(C), a dependent child is a child "whose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship." A finding of dependency must focus upon the condition of the child, and whether the child is receiving proper care, rather than any faults exhibited by the parents. In re Bibb (1980),70 Ohio App.2d 117. A finding of dependency must be established by clear and convincing evidence. R.C. 2151.35(A). Pursuant to R.C.2151.353(A)(3), if a child is adjudicated as abused, neglected, or dependent, the court may award legal custody of the child to any parent or other person who files a motion requesting legal custody. In doing so, the court shall again consider the best interest of the child. R.C.2151.42.
Clear and convincing evidence is that measure or degree of proof which is more than a mere preponderance of the evidence, but does not reach the extent of the certainty required to establish "beyond a reasonable doubt" in criminal cases. It is that quantum of evidence which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. Cross v. Ledford (1954), 161 Ohio St. 469. When reviewing a trial court's decision on a manifest weight of the evidence basis, we are guided by the presumption that the findings of the trial court were correct. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, part one of the syllabus. The rationale for this presumption is that the trial court is in the best position to evaluate the evidence by viewing witnesses and observing their demeanor, voice inflections, and gestures. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77. Thus, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279.
In the present case, the trial court undertook an extensive and detailed review of the evidence presented at the hearing. In addressing appellant's testimony, the court noted that appellant has four children, and does not have custody of any of them. FCCS's involvement with appellant dates back to the birth of her first child ten years ago. Appellant's testimony conceded that her supervised visitation originally took place at her own home, but that she became upset during these visits, and the visits thereafter have taken place at FCCS facilities.
Appellant's testimony at the hearing supports many of the concerns raised by other witnesses in the case. Her testimony is frequently rambling, inconclusive, contradictory, and argumentative. At various points in the proceeding, appellant became argumentative during the testimony of other witnesses and the magistrate was obligated to take a recess in order to allow appellant to calm down. Appellant confirmed her history of mental health problems, her estrangement from her family and a sometimes violent history of confrontations with her siblings, and possible brain damage suffered as a result from being struck on the head with a skillet by her father as a teenager.
At one point, appellant became distraught under questioning and asked to leave the hearing. Even under relatively favorable examination by counsel and the Guardian ad litem for the children, appellant would mistake innocuous background questions for accusations, and respond with aggressive, rambling answers often calling into play facts, occurrences, and controversies unrelated to the proceedings.
Roxanne Vincent, who is employed by FCCS as a case aide and who was responsible for transporting Steven home from supervised visitations at appellant's house, testified in regard to one incident when appellant became upset as she attempted to put infant Steven into his snowsuit. Appellant was manifestly unable to cope with this relatively minor task, but adamantly rejected any attempt by Ms. Vincent to assist her. During the roughly 20 minutes which appellant was attempting to put Steven into his snowsuit, appellant began handling Steven excessively firmly, picking him up and putting him down aimlessly, and became more and more verbally abusive to Ms. Vincent and the supervising caseworker who was also present. Appellant was never able to properly place Steven in his snowsuit and the car seat, and Ms. Vincent, out of concern for Steven's well-being, eventually resorted to taking Steven, placing him into another unsuitable car seat already in the vehicle, and driving around the corner out of the sight of appellant in order to stop and properly secure Steven in his snowsuit and car seat.
The supervising caseworker on that occasion, Donna Robertson, also testified and described the snowsuit incident, as well as earlier difficulties also occurring that particular home visit. Ms. Robertson testified, in contrast, that a visit she supervised in an FCCS facility went much more smoothly.
Barbara Williams, appellant's older sister, testified that appellant was not patient with the children and had age-inappropriate expectations of them. Barbara Williams testified, as an example, that appellant screamed at Steven when he pulled appellant's hair, although Steven was far too young at the time to be aware of what he had done. Barbara Williams recalled appellant's difficulty in caring for her children, and opined that appellant did not have the patience or understanding of children to take care of them in her own home. Barbara Williams also described a physical confrontation between herself and appellant which resulted in appellant spending two nights in jail.
Delina Hunt, Mindy's foster mother for one year at the time of the hearing, testified that visits between Mindy and appellant had taken place in Ms. Hunt's home for some time, but that appellant's constant screaming and arguing upset both Mindy and Ms. Hunt's own children. Ms. Hunt had observed that matters improved after visits were moved to an FCCS office, although Mindy was often upset on Wednesdays when she returned from such visits. Ms. Hunt specifically described an incident late in 2000 when she had arranged to pick up Mindy at a department store when informed by a caseworker that a supervised visit by appellant with Mindy and Steven, including a trip to the store, was running late. As Ms. Hunt and her husband entered the store, they heard Mindy screaming. As they approached the appellant, she insisted, while upset and crying, that Mindy change out of clothing appellant had purchased for her at the store. Appellant insisted that the clothing be returned to her immediately, rejected suggestions that the child change at home and the clothing be brought to appellant, and forced Ms. Hunt to change Mindy in a store aisle. Ms. Hunt described appellant as extremely upset, emotional, irrational and adamant about retrieving the clothes for reasons that appellant was nonetheless unable to articulate. Ms. Hunt saw this behavior as typical of appellant's difficulties in dealing appropriately with her children as well as adults.
Kimberly Star, a caseworker for both children, testified that during initial visits there was little interaction between appellant and Mindy, possibly because appellant was almost immediately pregnant with Steven. While appellant appeared more nurturing with Steven, appellant still was somewhat detached from Mindy during supervised visits. Appellant would lose track of Mindy's whereabouts during visits and often appellant would become upset over innocuous comments and accuse Ms. Star of calling appellant stupid. On some of these occasions, the children would become upset, appellant would blow up, and the visit would be terminated.
In Ms. Star's professional opinion, it was in Mindy's best interest to stay with Delina Hunt, and in Steven's best interest to give temporary custody to the agency. Ms. Star noted that, while appellant had complied with some aspects of the case plan, including attending some parenting classes, appellant appeared to have derived no benefit in terms of parenting skills from this compliance, and remained seriously deficient in most aspects of her parenting abilities.
During the course of Ms. Star's testimony, appellant became extremely argumentative in the hearing room, interrupted constantly, accused Ms. Star of attempting to tell appellant what to do in her parenting, and generally so disrupted testimony that the magistrate was again forced to take a recess.
Testifying on behalf of appellant was Michael Roden, her licensed professional counselor at North Central Counseling. He testified that he had met with appellant 15 times over the previous 18 months. Appellant was receiving anti-depressant medication prescribed by Dr. Parboo, the staff psychiatrist, although her medication was frequently interrupted by pregnancy. Mr. Roden did not see appellant as dangerous to herself or others and, based on having seen her "a few times" with the children, found her to be an "adequate parent."
During the course of proceedings, counsel for FCCS requested that the trial court take judicial notice of a prior finding, in previous proceedings concerning Mindy, that appellant had been diagnosed as suffering from bipolar disorder. Counsel for appellant objected, but the magistrate determined that the court could properly take judicial notice of facts in the prior proceedings in the same case, and that weight would only be given to this evidence in proceedings concerning Mindy, not Steven.
Based upon the above testimony, with respect to Steven, we find that there was ample, competent, credible evidence before the trial court to support a finding by clear and convincing evidence that Steven should be adjudicated a dependent child. Examining appellant's repeated outbursts in the courtroom, the specific incidents of conduct related by caseworkers and FCCS aides, and appellant's ongoing difficulties in acquiring even rudimentary parenting skills, the evidence in the present case amply supported the trial court's conclusion that the best interests of Steven warranted the state assuming the child's guardianship under R.C. 2151.04(C).
With respect to Mindy, we also find that there was sufficient evidence before the trial court to support the award of legal custody to Mindy's foster mother, Delina Hunt. Testimony established that Mindy was attached to her foster parents and that they provided a stable home for her. The foster parents remained receptive to continued maternal visits, and as noted by the trial court, the award of legal custody would not terminate all parental rights, unlike a permanent commitment proceeding under R.C. 2151.414. The fact that the foster parents are relatives and thus, in a position to encourage contact between Mindy, her mother, and other family members, supports the trial court's conclusion. Most significantly, the trial court's reservations with respect to appellant's ability to properly parent Steven are, based upon the evidence, even more warranted with respect to appellant's conduct towards Mindy and support the trial court's adjudication.
Finally, we address appellant's argument upon appeal that the magistrate and trial court improperly relied upon a psychological assessment of appellant prepared more than a year prior to the hearing appealed from. This psychological evaluation detailed appellant's extensive mental problems, including a finding of depression and manic symptoms. The evaluation described appellant's parenting skills as "marginal to poor," and otherwise described her difficulties in dealing with her children, family, and other persons in general. The magistrate explicitly noted that he was considering the prior report only with respect to Mindy, and not Steven. As noted by the trial court, a court is entitled to consider matters arising under its ongoing jurisdiction prior to the final adjudicatory hearing. In re Pieper Children (1993),85 Ohio App.3d 318, 323-324. Although the psychological evaluation of appellant was a year or more old at the time of the hearing, this would not render the evidence conclusively stale or unreliable in the context of this proceeding. We therefore find that the trial court did not improperly rely on this evidence in its findings with respect to Mindy. Moreover, the report in question was essentially cumulative and not essential to support the trial court's decision.
In conclusion, we find that the trial court's determination with respect to both Mindy and Steven is supported by clear and convincing evidence, is not against the manifest weight of the evidence, and appellant's first and second assignments of error are overruled. The judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, are affirmed.
Judgments affirmed.
TYACK, P.J., and McCORMAC, J., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.