OPINION
{¶ 1} Appellant Danielle Crookshanks appeals the January 14, 2002 Judgment Entry of the Tuscarawas County Court of Common Pleas, Juvenile Division, which adjudicated her children, Michael Locker (DOB 5/12/87), Nicole Crookshanks (DOB 5/24/89) and Kenneth Crookshanks (DOB 7/19/90) to be neglected and dependent children.
 STATEMENT OF THE CASE AND FACTS {¶ 2} Appellant is the natural mother of Michael, Nicole and Kenneth. Michael's father, Brandon Fox, is deceased. Kenneth Crookshanks, Sr. is the natural father of Nicole and Kenneth. Although a party below, Mr. Crookshanks, Sr. did not appeal the trial court's decision. Appellant and Mr. Crookshanks were married but later divorced. The parties entered into a joint custody arrangement, but appellant was essentially responsible for the care of the children.
 {¶ 3} Tuscarawas County Department of Jobs and Family Services ("TCJFS") initially became involved with the children after the New Philadelphia City School District filed a truancy action. Both Michael Locker and Nicole Crookshanks had missed excessive amounts of school and in May, 2001, the Tuscarawas County Court of Common Pleas, Juvenile Division, adjudicated the children truant.
 {¶ 4} On June 22, 2001, TCJFS filed a complaint alleging all of appellant's children were dependent and neglected. The complaint alleged every possible statutory basis provided under R.C. 2151.03 and 2151.04. At the time of the filing of the complaint, temporary custody of Michael was given to his maternal grandmother, Marge Locker, and temporary custody of Nicole and Kenneth was given to their father, Kenneth Crookshanks, Sr. The children remain in these placements. On July 12, and 27, 2001, a magistrate conducted an adjudicatory hearing regarding the allegations contained within the complaint.
 {¶ 5} Approximately four years before the TCJFS action, appellant became romantically involved with Larry Ross. After dating for six or seven months, Mr. Ross moved in with appellant and her children. Mr. Ross has a felony conviction for child endangerment arising out of Coshocton County, Ohio. In that case, Mr. Ross was convicted of child endangerment for striking a child, not his child, with a belt. As a result, Mr. Ross left bruise marks on the child. Mr. Ross plead guilty to the charge, and the Coshocton County Court of Common Pleas sentenced Mr. Ross to a term of five years.
 {¶ 6} While in prison, Mr. Ross acquainted himself with the law on corporal punishment. As a result of his post-conviction relief motion, Mr. Ross was relieved of the conviction. However, the Coshocton County Prosecutor's Office re-indicted Mr. Ross with a new count of child endangering. In exchange for time served, Mr. Ross pled guilty to the new indictment.
 {¶ 7} During the time Mr. Ross lived with appellant and her children, he was the primary care provider. In that capacity, appellant believed he engaged in appropriate discipline, including the administration of corporal punishment. Mr. Ross testified about the forms of corporal punishment he used, including the time, methods, supervision, and severity. Mr. Ross testified the discipline he administered to the children was all necessary, and legal.
 {¶ 8} Beatrice Flett, appellant's case manager, also testified. Ms. Flett testified appellant had failed to abide by the conditions of the voluntary case plan by permitting the children to have contact with Mr. Ross. The case plan stated Mr. Ross was not to be around the children, and no corporal punishment was to be administered to the children for any reason until the completion of the case plan.[1]
 {¶ 9} Ms. Flett first testified Mr. Ross was under a "no contact" order with regard to the children. However, upon cross-examination, Ms. Flett conceded there was no actual "no contact" order in place. Rather, Ms. Flett was relying upon a May 30, 2001 Judgment Entry adjudicating two of appellant's children to be unruly. Within this judgment entry, the trial court included a list of sanctions with which the children were to comply. Paragraph 9 stated "Mr. Ross is ordered not to be in the home until further order of the court. No other adults will be permitted to be living in the home until further order of the court."
 {¶ 10} Ms. Flett also testified appellant and her children were involved in an automobile accident in a vehicle owned by Mr. Ross. The children were not wearing seatbelts and suffered injuries as a result of the collision.
 {¶ 11} While the voluntary case plan was in effect, appellant lost her home due to a fire. As a result of the fire, appellant asked her ex-husband, Kenneth Crookshanks, Sr., and her mother, Marge Locker, to assist in the child care. Accordingly, Nicole and Kenny were cared for by appellant and Mr. Crookshanks, Sr., and Michael was cared for by Marge Locker.
 {¶ 12} After hearing all the testimony, the magistrate issued a Judgment Entry filed August 3, 2001. The magistrate found Mr. Ross moved out of the house according to the plan developed by appellee. Additionally, Mr. Ross, in accordance with the safety plan, participated in the Mends Group but the group was terminated due to a lack of funding. As a result, Mr. Ross was unable to complete the program pursuant to the case plan.
 {¶ 13} The magistrate found appellant admitted contact between the children and Mr. Ross including overnight stays at Mr. Ross' house after signing the safety plan requiring there be no contact with Mr. Ross. The magistrate concluded the children should be found neglected and dependent and issued a magistrate's decision on August 3, 2001. On August 6, 2001, appellant objected to the format of the magistrate's entry and requested specific conclusions of law to be set forth regarding the statutory basis for the findings pursuant to R.C. 2151.03 and 2151.04. The trial court ordered the magistrate to comply and set forth a specific law.
 {¶ 14} On August 28, 2001, the magistrate filed an amended decision finding the children neglected pursuant to R.C. 2151.03(A)(3) and 2151.03(A)(6) and further finding the children dependent pursuant to R.C. 2151.04(A), (C), and (D)(2). On September 11, 2001, appellant filed objections to the magistrate's decision. The trial court conducted a hearing. In a January 14, 2002 Judgment Entry, the trial court found the children were not dependent pursuant to R.C. 2151.04(D)(2), a conclusion to which appellees conceded the legal impossibility. The trial court overruled all of appellant's other objections.
 {¶ 15} It is from this decision appellant prosecutes her appeal, assigning the following errors for our review:
 {¶ 16} "I. THE RECORD FAILS TO DEMONSTRATE BY CLEAR AND CONVINCING EVIDENCE THAT THE CHILDREN WERE NEGLECTED AS CONTEMPLATED BY R.C. 2151.03(A) OR (A)(6).
 {¶ 17} "II. THE RECORD FAILS TO DEMONSTRATE BY CLEAR AND CONVINCING EVIDENCE THAT THE CHILDREN WERE DEPENDENT AS DEFINED BY R.C. 2151.04(A) OR (C).
 {¶ 18} "III. THE TRIAL COURT ERRED BY BASING ITS ADJUDICATION OF DEPENDENCY AND NEGLECT ON CIRCUMSTANCES THAT DID NOT EXIST AT THE TIME OF THE COMPLAINT OR AT THE DATE OF THE ADJUDICATORY HEARING.
 {¶ 19} "IV. THE TRIAL COURT ERRED WHEN IT RULED THAT PHYSICAL DISCIPLINE CANNOT BE ADMINISTERED BY A PERSON PREVIOUSLY CONVICTED OF CHILD ENDANGERMENT.
 {¶ 20} "V. THE TRIAL COURT ERRED WHEN IT RELIED ON INFORMATION OUTSIDE THE RECORD TO DETERMINE THAT LARRY ROSS WAS ". . . NOT OF BENEFICIAL PRESENCE IN THE CHILDREN'S LIVES, AND, IN FACT, WAS DETRIMENTAL."
 I {¶ 21} In appellant's first assignment of error, she maintains there was inadequate evidence contained within the record to sustain a finding of neglect pursuant to R.C. 2151.03(A)(3) and 2151.03(A)(6). We agree.
 {¶ 22} Neglect is defined in R.C. 2151.03, which states, in pertinent part:
 {¶ 23} "(A) As used in this chapter, "neglected child" includes any child: * * * (2) Who lacks adequate parental care because of the faults or habits of the child's parents, guardian, or custodian; (3) Whose parents, guardian, or custodian neglects the child or refuses to provide proper or necessary subsistence, education, medical or surgical care or treatment, or other care necessary for the child's health, morals, or well being; (4) Whose parents, guardian, or custodian neglects the child or refuses to provide the special care made necessary by the child's mental condition; * * * (6) Who, because of the omission of the child's parents, guardian, or custodian, suffers physical or mental injury that harms or threatens to harm the child's health or welfare; * * *"
 {¶ 24} On August 28, 2001, magistrate filed an amended decision indicating the children were neglected pursuant to R.C. 2151.03(3) and (6). In her objections to the magistrate's decision, appellant points out the complaint alleged three fundamental facts to support the state's assertion the children were neglected. First, the complaint stated the mother had violated a no contact order. However, nothing in the magistrate's decision suggested a factual basis for that allegation. Further, Ms. Flett conceded the "no contact" order she had based her allegation upon was actually the order stating Mr. Ross was not to be in the home. As of the time of the filing of the complaint through the dates of the hearing, Mr. Ross was not in the home. We agree with appellant there was no factual basis for the allegation. Because appellee failed to prove this allegation by clear and convincing evidence, it would be inappropriate for the trial court to base its decision the children were neglected upon this allegation.
 {¶ 25} The second factual allegation involved the injury to the children after appellant was in an accident. Because the children were not wearing seatbelts, appellee contends their injuries were sufficient to constitute neglect pursuant to R.C. 2151.03(A)(6). We agree with appellant the record cannot support this conclusion.
 {¶ 26} As argued by appellant, there was no showing the failure to wear the seatbelts was the cause of the injuries sustained by the children. Further, there was no indication any failure to wear seatbelts was an actual traffic violation. None of the children were four years of age or less than forty pounds and therefore R.C. 4511.81(A) would not apply. Further, R.C. 4513.263, which requires seatbelts for front seat passengers was also not proven by clear and convincing evidence. There was no evidence as to whether the children were front seat passengers or rear seat passengers. Accordingly, appellee failed to prove by clear and convincing evidence the accident constituted an omission by appellant which caused physical or mental injury or threatened to harm the children's health or welfare.
 {¶ 27} The third factual allegation essentially argued appellant failed to cooperate with the appellee in following her case plan by prohibiting any contact between Mr. Ross and her children. However, appellant's decision not to voluntarily comply with the case plan does not, in and of itself, prove by clear and convincing evidence a violation of R.C. 2151.03(A)(6).
 {¶ 28} Accordingly, appellant's first assignment of error is sustained.
 II {¶ 29} In appellant's second assignment of error, she maintains the trial court erred in finding the children were dependent as defined by R.C. 2151.04(A) or (C). We agree.
 {¶ 30} Dependency is governed by R.C. 2151.04. The statute states, in relevant part: As used in this chapter, "dependent child" means any child: (A) Who is homeless or destitute or without adequate parental care, through no fault of the child's parents, guardian, or custodian; * * * (C) Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship; * * *."
 {¶ 31} The focus of a charge that a child is dependent under R.C.2151.04(C) is on the child and his condition and not on the faults of the parents." In Re Bishop (1987), 36 Ohio App.3d 123. The essence of dependency is a focus on the condition of the children, not on the fault of the parents. In re: Bibb (1980), 70 Ohio App.2d 117; In re: Riddle
(1977), 79 Ohio St.3d 259.
 {¶ 32} Subsection (A) permits a finding of dependency where a child is homeless or destitute or without adequate parental care, through no fault of the child's parents. However, Ms. Flett conceded the children were receiving adequate medical care, food, clothing, and shelter at the time of the complaint and at the time of the hearing. At the time the complaint was filed, appellant's mobile home had been destroyed by a fire. However, appellant immediately arranged for shelter for herself and her children.
 {¶ 33} Pursuant Subsection (C), the trial court could also find the children dependent if their condition or environment was such to warrant the state, in the interests of the child, in assuming the child's guardianship. Appellant points out the only allegations and/or findings of fact contained within the magistrate's decision and the trial court's judgment entry are fault findings as opposed to findings focused on the condition of the children.
 {¶ 34} These fault findings include assigning excessive chores; using inappropriate discipline; contributing to truancy; maintain poor house keeping standards; and exposure to domestic violence.
 {¶ 35} In its judgment entry, the trial court stated:
 {¶ 36} "Two of Danielle Crookshanks' children were involved with the Juvenile Court due to their truancy from school. Despite argument to the contrary, school attendance by children is, in fact, a parental responsibility. A review of Danielle Crookshanks' own testimony reveals an admission by her that her daughter was not promoted to the next grade level in school due in part to the truancy problems. Numerous witnesses testified to animal feces in the home and deplorable home conditions. Danielle Crookshanks admitted to Kenneth Crookshanks that Larry Ross had physically assaulted her. One of the children witnessed a physical altercation between Larry Ross and Danielle Crookshanks. One child, ill with the flu, was left alone overnight with no phone number to contact his mother, and no prior knowledge that she did not plan to return.
 {¶ 37} "The home description alleged by Danielle Crookshanks is a household where no angry words are ever exchanged, there is an idyllic distribution of age appropriate household tasks and chores, and discipline of the children is rare but only administered after careful adult review and reflective communication with the child. The admitted work schedules of Larry Ross and Danielle Crookshanks make this level of ongoing communication impossible. The pattern of discipline described by Danielle Crookshanks, if true, would simply not result in the need to use belts, sticks, and a plastic cutting board. This portrait is simply not believable and is refuted by the testimony of other witnesses involved with the family. The admitted and witnessed domestic violence between Larry Ross and Danielle Crookshanks makes the assurances of Larry Ross concerning his careful control of his anger simply unbelievable. This man severely beat a child and is convicted of felony child endangering. To allow Larry Ross to physically discipline any other child is dangerous, ill-advised, and totally unacceptable. Danielle Crookshanks was repeatedly warned that Larry Ross was not appropriate. Information was provided to this Judge in the unruly cases of two of these minor children that Larry Ross was not a beneficial presence in the children's lives and, in fact, was detrimental. This Court ordered that he could not continue to reside in the household, and warned Nicole Crookshanks that he should not have contact with the children.
 {¶ 38} "Based upon a review of the transcript and applicable law, the remaining Objections to the Magistrate's Decision of August 28, 2001 are OVERRULED. Except, as stated above, the Magistrate's Decision of August 28, 2001 is approved, adopted, and entered as a matter of record."
 {¶ 39} With regard to the truancy issue, we are again left with the conclusion that the condition did not exist at the time of either of the filing of the complaint or at the time of the hearing. The children had been adjudicated unruly and subjected to court sanctions. There was no allegation in the complaint the children had violated any of these sanctions or that appellant had, in any way, created an environment where the children continued to be truant.[2]
 {¶ 40} The trial court also talked about numerous witnesses testifying to animal feces being present in the home and deplorable home conditions. Our review of the record demonstrates no support for this finding. There was testimony by Kenny Crookshanks, Jr. indicating that when the children got a puppy, the puppy would often relieve itself on the floor. However, Kenny was responsible for immediately cleaning up any such mess. Additionally, both the social worker and the art therapist testified they did not believe animal feces was a problem in the home.
 {¶ 41} Next, the trial court addresses the situation of domestic violence between appellant and Mr. Ross. The trial court appears to be specifically concerned with the pattern of discipline administered by Mr. Ross and the presence of Mr. Ross in the home. However, at the time of the filing of the complaint and at the time of the hearing Mr. Ross had left the home. There was no testimony that Mr. Ross had ever returned to the home except for the time when appellant's home burned down. Accordingly, it was insufficient for the trial court to base its decision upon the past conduct of appellant with regard to Mr. Ross.
 {¶ 42} For these reasons, appellant's second assignment of error is sustained.
 III, IV, V {¶ 43} In appellant's third assignment of error, she contends the trial court erred in basing its adjudication of dependency and neglect on circumstances not existing at the time of the complaint or at the adjudicatory hearing. In appellant's fourth assignment of error, she maintains the trial court erred in finding physical discipline cannot be administered by a person previously convicted of child endangerment. In appellant's fifth assignment of error, she maintains the trial court erred in relying on information outside the record to determine Mr. Ross was "not a beneficial presence" in the children's lives. In light of our disposition of appellant's first and second assignments of error, we find appellant's third, fourth and fifth assignments of error to be moot.
 {¶ 44} The January 14, 2002 Judgment Entry of the Tuscarawas County Court of Common Pleas, Juvenile Division, is reversed.
By: Hoffman, P.J., Edwards, J. and Boggins, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the January 14, 2002 Judgment Entry of the Tuscarawas County Court of Common Pleas, Juvenile Division, is reversed. Costs assessed to appellee.
[1] We note the case plan contemplated future involvement between Mr. Ross and the children. The case plan required Mr. Ross to complete certain anger management programming, however, as discussed infra, the program was terminated due to a lack of funding before Mr. Ross was able to complete it.
[2] Should truancy continue to be a problem in the future, such would support a new complaint for neglect.