DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Rodney Hines, appeals from the decision of the Summit County Court of Common Pleas, Juvenile Division. This Court affirms.
 I. {¶ 2} Appellant, Rodney Hines ("Father"), his two minor daughters, TS and JH, TS's mother, Kathy Schiele, JH's mother, Linda Hines, and Father's girlfriend, Angela Carter, a registered sex offender, resided in an Akron Metropolitan Housing Authority ("AMHA") home located at 242 Third Street NW in Barberton, Ohio ("the home"). JH and TS were approximately eleven years old during the time period at issue. Father and Ms. Carter resided in the back side of *Page 2 
the home while TS, JH and their mothers resided in the front portion. The two portions of the home were separated by a door.
 {¶ 3} After receiving a third referral regarding the welfare of TS and JH, CSB caseworker Denise Smith-Hall visited the home on August 11, 2006. Ms. Hall became very concerned about the children's living conditions after observing the condition of the home and the children. Ms. Hall noticed several cats around the home. She discovered cat feces on the floor of the home. The front porch was littered in debris and garbage. Both children appeared very dirty. Their feet were black and they were walking barefoot on the dirty floor. The odor in the home was so strong that Ms. Hall was only able to stay inside for short periods of time. The adults acknowledged that they had a flea problem but assured Ms. Hall that they were addressing it. Ms. Hall was also concerned that the children were living with Ms. Carter, a registered sex offender whose victims were approximately the same age as JH and TS.
 {¶ 4} A City of Barberton police officer, a City of Barberton property maintenance inspector and an AMHA housing inspector were also present at the home on August 11, 2006. Before the property inspector arrived, Ms. Hall discussed a voluntary safety plan with Father which permitted Father to keep the children in his portion of the home and required the family to clean the front portion of the home. However, once the property inspector investigated the home, he condemned it because of the unsanitary conditions. *Page 3 
 {¶ 5} The AMHA housing inspector terminated the AMHA agreement once he discovered that Ms. Carter was not registered to live in the home. He also terminated the agreement because he believed that the unit was not environmentally safe.
 {¶ 6} After learning that the home was being condemned, Ms. Hall spoke with Father about moving to another location. Father tried to contact his mother but was unsuccessful. According to Ms. Hall, Father did not have an alternative housing location for the children. He indicated to Ms. Hall that he thought he could stay at the home during the pendency of the landlord's appeal of the condemnation proceedings.
 {¶ 7} On August 14, 2006, Summit County Children's Services ("CSB") filed complaints in the Summit County Juvenile Court alleging that TS and JH were neglected and dependent children and seeking an emergency order of temporary custody of the girls. That same day, the Summit County Juvenile Court granted CSB's emergency ex parte order of emergency temporary custody.
 {¶ 8} On August 15, 2006, the Summit County Juvenile Court held a shelter care hearing on CSB's complaint. The trial court issued a decision on August 18, 2006 finding "reasonable grounds" to believe the children were neglected and/or dependent. The trial court placed the children in the emergency and temporary custody of CSB. An adjudication hearing was held on September 19 and September 20, 2006 before a magistrate. The magistrate issued an order on *Page 4 
September 26, 2006, finding the children to be neglected, pursuant to R.C. 2151.03(A)(2), and dependent, pursuant to R.C. 2151.04(B). The trial court adopted the magistrate's decision on September 26, 2006.
 {¶ 9} On October 10, 2006, Father filed objections to the magistrate's decision. The trial court overruled Father's objections on October 24, 2006. On October 27, 2006, the magistrate ordered that the children be placed in the temporary custody of CSB. On November 3, 2006, Father filed a motion for reconsideration and a motion to vacate the October 24, 2006 journal entry. Father alleged that he was not given enough time to prepare his objections. On November 9, 2006, the trial court granted Father an additional fourteen days to supplement his objections to the magistrate's decision. On November 27, 2006, Father filed a supplemental brief to his previously filed objections. The trial court overruled Father's objections on January 23, 2007. Father timely appealed the trial court's decision, raising one assignment of error for our review.
 II. ASSIGNMENT OF ERROR "THE DECISION OF THE COURT FINDING THE CHILDREN (J.H. T.S.) TO BE `NEGLECTED' AND/OR `DEPENDENT' AS DEFINED BY THE OHIO REVISED CODE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 10} In Father's sole assignment of error, he contends that the trial court's decision finding the children to be neglected and/or dependent was against the manifest weight of the evidence. We disagree. *Page 5 
 {¶ 11} The Supreme Court of Ohio has recently reaffirmed that the manifest weight of the evidence standard to be applied in civil cases is that standard which was explained in C.E. Morris Co. v. Foley Constr.Co. (1978), 54 Ohio St.2d 279, syllabus. See State v. Wilson,113 Ohio St.3d 382, 2007-Ohio-2202, at ¶ 24. Pursuant to this standard, a reviewing court will presume that the findings of the trier of fact are correct since the trial judge had an opportunity "`to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" Id., quoting Seasons Coal Co., Inc. v. Cleveland (1984),10 Ohio St.3d 77, 80. "`A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not.'"Wilson at ¶ 24, quoting Seasons Coal, 10 Ohio St.3d at 81. "Thus, a judgment supported by `some competent, credible evidence going to all the essential elements of the case' must be affirmed." Wilson at ¶ 26, quoting C.E. Morris, 54 Ohio St.3d at syllabus.
 {¶ 12} Accordingly, before this Court will reverse a judgment as being against the manifest weight of the evidence, it must determine whether the judgment of the trier of fact was supported by some competent, credible evidence going to all the essential elements of the case. If the judgment is so supported, then the judgment of the trial court must be affirmed. *Page 6 
 {¶ 13} In order to adjudicate a child dependent pursuant to R.C.2151.04(C), the trial court must determine by clear and convincing evidence that the child's "condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]" See, generally, Juv.R. 29(E)(4). Clear and convincing evidence is that which will produce in the trier of fact "`a firm belief or conviction as to the facts sought to be established.'"In re Adoption of Hol comb (1985), 18 Ohio St.3d 361, 368, quotingCross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus. While requiring a greater standard of proof than a preponderance of the evidence, clear and convincing evidence requires less than proof beyond a reasonable doubt. In re Parsons (Nov. 12, 1997), 9th Dist. Nos. 97CA006662 and 97CA006663, *3.
 {¶ 14} A finding of neglect must also be supported by clear and convincing evidence. R.C. 2151.35(A) and Juv.R. 29(E)(4). In reviewing a juvenile court's adjudication of neglect, this Court must determine whether the juvenile court had before it clear and convincing evidence that the child was neglected. See In re Jones (May 2, 2001), 9th Dist. No. 20306, at *4. R.C. 2151.03(A)(2) defines a neglected child as "any child * * * who lacks adequate parental care because of the faults or habits of the child's parents, guardian, or custodian[.]"
 {¶ 15} Clear and convincing evidence is not unequivocal. State v.Eppinger (2001), 91 Ohio St.3d 158, 164, quoting Cross,161 Ohio St. at 477. To the *Page 7 
contrary, evidence may be clear and convincing and yet admit a degree of conflict
and uncertainty that is properly resolved by the trier of fact:
 "The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts. * * * Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false." Cross, 161 Ohio St. at 477-78.
 {¶ 16} The focus of a dependency adjudication is not on the fault of the parents, but on the child's environment, including the condition of the home itself and the availability of medical care and other necessities. See In re Bibb (1980), 70 Ohio App.2d 117, 120. In order to establish dependency, therefore, CSB "was required to present evidence of conditions or environmental elements that were adverse to the normal development of the children." In re A.C., 9th Dist. Nos. 03CA0053, 03CA0054, and 03CA0055, 2004-Ohio-3248, at ¶ 14, citing In reBurrell (1979), 58 Ohio St.2d 37, 39.
 {¶ 17} The juvenile court determined that JH and TS were neglected and dependent children pursuant to R.C. 2151.03(A)(2) and R.C. 2151.04(B) because the girls "resided in a home that was unfit for human habitation with a registered sex offender whose victim was the same age as the children." Testimony at the adjudication hearing addressed three areas of concern: adequacy of living conditions, safety of the children, and health of the children. *Page 8 
 {¶ 18} Denise Hall, the CSB caseworker assigned to the case, visited the home on August 11, 2006. Ms. Hall testified that, at the time of her visit, Rodney Hines, Linda Davis, Kathy Schiele, Angela Carter, TS and JH were residing in the home. Ms. Hall testified that the barren ground outside the home was covered in vomit and garbage. She also noticed a few cats and cat feces on the porch and outside the front door. Upon entering the home, Ms. Hall detected a strong animal odor. The odor was so pungent that Ms. Hall could only remain in the home for a few moments at a time.
 {¶ 19} Ms. Hall discovered TS sleeping on the floor of the living room. She then discovered JH laying on three or four stacked twin mattresses. Ms. Hall testified that she was concerned about the cleanliness of the children because their feet were black from dirt and grime and both girls appeared dirty. She testified that TS was very thin and pale. Ms. Hall confirmed that the girls had an adequate food supply. Ms. Hall stated that she observed that both Ms. Schiele and Ms. Davis were covered in flea bites. The women acknowledged that they had a flea problem and informed Ms. Hall that they had arranged for someone to come to the home later that week to exterminate it of fleas. TS and JH only had a few flea bites. Ms. Hall later discovered that both girls had head lice. Ms. Hall expressed significant concern over TS's health. She explained that TS was extremely underweight and suffers from a neurological disorder. *Page 9 
 {¶ 20} Ms. Hall testified that during her visit, Father informed her that Ms. Carter was a registered sex offender. He told her that CSB had "cleared her." He told Ms. Hall that someone at CSB knew that Ms. Carter was residing in the home. While Ms. Hall was at the home, the building inspector condemned it. Father had no plan for an alternative living arrangement for TS and JH. Ms. Hall testified that Father thought he could remain in the home despite the fact that it was being condemned because his landlord was involved in on-going litigation over the home. Father told Ms. Hall that he wanted to take the children to his mother's home. However, Father was unable to reach his mother during Ms. Hall's visit and he had no other alternative housing for the children.
 {¶ 21} Father testified that there were seven cats and two dogs residing in the home. Father testified that for the past year he had been asking his landlord to make improvements to the home but she refused. Father attributed the litter and debris located in the front yard and porch area to his upstairs neighbors.
 {¶ 22} Father testified that he told Ms. Hall on August 11, 2006 that he had been talking with his new landlord for two weeks and had given his landlord a deposit. He testified that he told Ms. Hall that he was signing a lease for a new apartment on August 12, 2006. Father also testified that he told Ms. Hall that if he had to, he would leave Ms. Carter and would take the girls to his mother's home. He stated that he could have taken the children to his mother's home on August 11, 2006 but that CSB took the girls away before he could make arrangements. *Page 10 
 {¶ 23} Charlie Ries, a property maintenance inspector with the City of Barberton, also testified. On August 11, 2006, Mr. Ries visited the home upon the request of the City of Barberton Police. Mr. Ries testified that there were a few windows missing from the home. According to Mr. Reis, the front porch was littered with debris and junk. Mr. Reis noted that the roof was covered with a tarp. Mr. Ries testified regarding the strong stench he detected upon entering the home. He stated that on a scale of one to ten, the odor registered at ten. Mr. Reis determined that the home was unfit for human habitation because the roof was not structurally sound, there were electrical hazards, and the home was unsanitary as it was littered with junk, debris and animal feces. Accordingly, he condemned the home.
 {¶ 24} Mr. Reis took photographs of the home during his inspection. These photographs were admitted into evidence at the hearing. Mr. Reis acknowledged that he did not know whether the items on the front porch belonged to the upstairs or downstairs tenants.
 {¶ 25} Tom Baugher, a housing inspector for AMHA, testified regarding the annual inspection he conducted of the home on August 11, 2006. Mr. Baugher determined that the housing conditions "were not conducive to a safe environment between the filth, the smell and the general condition of the unit." Mr. Baugher terminated his inspection after detecting numerous fleas on his pants as he was concerned that the fleas jeopardized his health. Mr. Baugher testified that Father *Page 11 
was losing his subsidized housing voucher because Ms. Carter was not authorized to live in the home and because of the unsanitary condition of the home.
 {¶ 26} While there is evidence that Father unsuccessfully attempted to contact his mother on August 11, 2006, there was no evidence regarding the condition of his mother's home or whether the children would be welcome to stay with his mother. There is disputed testimony regarding whether Father had an alternative plan for the children. There was ample testimony that the children lacked adequate parental care. Ms. Hall, Mr. Reis and Mr. Baugher testified that the home was in deplorable condition. In addition, there was substantial testimony regarding the children's lack of a healthy living environment. Father agreed that they had an on-going flea problem and that the children had head lice. Ms. Hall testified that the children and their mothers had several flea bites. Father testified regarding the special care TS required as a result of her significant health problems. Father also acknowledged Ms. Carter's status as a registered sex offender. It is clear from the evidence that the children needed to be rescued from those living conditions. Upon review, we find that the judgment of the trial court is supported by competent, credible evidence that TS and JH's environment was such that the State was warranted in assuming temporary custody.
 {¶ 27} Father's assignment of error is overruled.
 III. *Page 12 {¶ 28} Father's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
CARLA MOORE FOR THE COURT
SLABY, P. J.
 WHITMORE, J. *Page 13 
 CONCUR *Page 1